[No. 4655.]

THE DENVER & RIO GRANDE RAILROAD COMPANY v. WARRING, ADMINISTRATRIX.

1. **Courts—Statutory Construction—Statutes of Other States.**

In an action based upon the statutes of another state, this court is bound by the construction placed upon such statutes by the supreme court of such state.—P. 128.

2. **Railroads—Death of Employee—Action by Personal Representative—Statutory Construction.**

Section 3216 of the Comp. Laws of New Mexico provides that every corporation operating a railway within that territory shall be liable for damages sustained by any employee in consequence of mismanagement, carelessness, neglect, default or wrongful act of any agent or employee of such corporation while in the exercise of their duties, when such mismanagement, etc., could have been avoided by such corporation through the exercise of reasonable care in the selection of competent employees or agents, or by not overworking them an unreasonable number of hours; and § 3218 provides, in substance, that a cause of action arising under this section shall be brought by the personal representative of the deceased. Held, that such sections confer a right of action upon the personal representative for the death of a railroad employee caused by defendant company's failure to select a sufficient number of competent employees to properly inspect its tracks and the hillsides adjoining, and to guard against falling rocks.—P. 128.

3. Damages for Death—Killed in Another State—Action by Personal Representative—Statutes of Another State—Distribution of Proceeds.

The laws of New Mexico require actions for death caused by the negligence or neglect of any railway company to be brought in the name of the personal representative of the deceased, and the proceeds obtained thereby to be distributed to the heirs, as designated by statute; and although by the laws of Colorado the personal representative has no right of action in such cases, but such right accrues to the heirs direct according to the preference fixed by statute, yet such an action, being transitory, may be brought in Colorado by the personal representative for a death caused in New Mexico, and the proceeds recovered thereby distributed to the persons entitled under the statutes of the latter place.—P. 129.

4. Railroads—Master and Servant—Death of Servant—Negligence of Master—Question for Jury.

Where in an action for the death of a railroad employee killed by the overturning of a locomotive, caused by a large rock rolling down the mountain side and displacing the rails, it appeared from the evidence that the rock came from a point beyond the right of way but plainly visible therefrom; that a few days before another rock had similarly rolled down on the track about 50 feet distant therefrom; that a short time prior thereto a large quantity of dirt and small rock had come down in the same canyon and completely covered the track; that the wreck occurred during the spring when these disturbances were more likely to occur; that the company did not have the track patrolled at night; that no inspection was made at this point after 5:30 p. m., and the wreck occurred at 11:30 p. m.    Held, that the question of whether defendant was chargeable with negligence was properly submitted to the jury.—P. 137.

5. Instructions—Evidence—Credibility of Witness.

An instruction that "if you believe that any witness has wilfully testified falsely to any material fact in the case, you may disregard the whole of his or her testimony," is proper.—P. 142.

6. Instructions—Duty of Jury—Knowledge Common to Mankind.

An instruction that "you have a right, in elucidating or explaining the testimony and arriving at your verdict, to take into consideration any knowledge which you may have which is common to mankind generally, touching the matters testified about," only permits the jury to use the knowledge common to mankind, and does not authorize it to go beyond the evidence. —P. 142.

7. **Railroads—Master and Servant—Death of Servant—Negligence of Master—Question for Jury—Instructions.**

In an action for the death of a railroad employee killed by the overturning of a locomotive, caused by a large rock rolling down the mountain side and displacing the rails, and such wreck happened during the spring of the year and at a place where such disturbances were more liable to occur, and the track at such point had not been inspected for about six hours prior to the overturning of the engine, it is not error for the court to submit the question to the jury of whether the railroad company was chargeable with negligence in not patrolling the track or making other necessary inspection for the protection of the passage of its trains, and in not protecting the particular train upon which deceased was riding.—P. 143.

8. **Railroads—Master and Servant—Death of Servant—Instructions—Equivalent Words.**

In an action for the death of a railroad employee killed by the overturning of a locomotive, caused by a large rock rolling down the mountain side and displacing the rails, the court instructed that if defendant, "in the exercise of ordinary care, prudence, and foresight, could have reasonably apprehended that boulders were liable to roll down from the mountain side onto the track, and that any track walkers in that immediate vicinity, in passing over the point in question in front of this train, might have discovered that the boulder or rock had rolled down * * * and warned the train in time to have avoided the injuries," plaintiff was entitled to recover. Held, that the word "might" did not impose a higher degree of care upon the company than the law imposes, as the use of the words "might have discovered," have no greater significance, taken in connection with the testimony and the other instructions, than the words "would have discovered."—P. 144.

9. **Railroads—Master and Servant—Death of Servant—Assumed Risk—Instructions.**

In an action for the death of a railroad employee killed by the overturning of a locomotive, caused by a large rock rolling down the mountain side and displacing the rails, the court instructed that the jury should decide whether the deceased had or had not assumed the risk of a boulder rolling down the mountain side and injuring the track, and that the law excuses a master where the injury results to the servant from the ordinary hazards which are incident to the nature of the employment, but not from a cause which the master, by the exercise of proper care and prudence, could have foreseen and guarded against.

Held, that, as the danger was not so obvious as to warrant the court in declaring as a matter of law that the deceased assumed the risk, the question was properly submitted to the jury.—P. 145.

10.   Railroads—Master and Servant—Death of Servant—Rules of Company—Evidence—Instructions.

In an action for the death of a railroad brakeman while riding on the engine, an instruction that if deceased was riding in such a position upon the engine as a head brakeman usually assumes in the discharge of his duty, and that such place was a reasonably safe one, then the mere fact of his riding on the engine would not be such contributory negligence as to defeat a recovery, is not objectionable on the ground that it ignores or abrogates defendant company's rules, in the absence of introducing such rules in evidence or tendering an instruction covering such subject.—P. 146.

11.   Railroads—Master and Servant—Death of Servant—Negligence of Master—Instructions.

In an action for the death of a railroad employee killed by the overturning of a locomotive, caused by a large rock rolling down the mountain side and displacing the rails, an instruction that if the defendant in the exercise of reasonable and ordinary care could not have discovered that the rock was liable to fall on the track, the plaintiff is not entitled to recover, unless the jury further find that the defendant was negligent in not properly inspecting its track prior to the passage of the train, and that such negligence was the proximate cause of the injury, is not erroneous.—P. 147.

12.   Same.

In an action against a railroad company for the death of an employee, an instruction that "the company should have used all reasonable precaution and ordinary care to secure the safety of its employees by keeping a sufficient force at command, and of sufficient capacity to keep its roadway reasonably safe for the passage of its trains and the employees in charge thereof, and it cannot, for want of watchfulness, expose its employees to unreasonable risk and escape liability, but the duty imposed is that of ordinary care, and the ordinary care required must be measured by the danger of the service and proportioned by it," is not erroneous as in effect charging that the sole and principal aim of the operation of a railroad is the safety of its employees, as it is the duty of a railroad company to use all reasonable precaution to secure the safety of its employees, and to keep a sufficient force at command to keep its roadway

reasonably safe for the passage of its trains and the employees
in charge thereof.—P. 146.

13. **Railroads—Master and Servant—Assumption of Ordinary
Risks—Negligence of Master.**

A railway employee assumes only the "ordinary" risks of
his employment, and not the risks arising from the negligence or
want of reasonable care on the part of the railway company in
inspecting its track or maintaining it in proper condition.—P. 148.

*Appeal from the District Court of La Plata County.
Hon. Jas. L. Russell, Judge.*

Action by Belle Warring, as administratrix,
against The Denver & Rio Grande Railroad Com-
pany. From a judgment for plaintiff, defendant
appeals.                                    *Affirmed.*

Messrs. Wolcott, Vaile & Waterman and Mr.
Reese McCloskey, for appellant.

Mr. B. W. Ritter and Mr. J. C. Petheridge, for
appellee.

Mr. Justice Steele delivered the opinion of the
court:

Warring was employed by The Denver & Rio
Grande Railroad Company as a brakeman on one
of the company's freight trains during the month
of March, 1901. He lost his life in a wreck occurring
on that portion of the road situated in New Mexico.
At the time of his death he was a resident of Du-
rango in this state. His widow, the appellee here,
was appointed administratrix of his estate by the
county court of La Plata county on October 24, 1901,
and on November 4, 1901, brought this action, claim-
ing that it was by reason of the negligence of the
company that her intestate lost his life. The com-
plaint charges the company with negligence; and al-
leges that it negligently and carelessly failed to pro-
vide for the proper inspection of its track; and care-

lessly and negligently failed to cause any examination to be made of the hillside or of the boulders, rocks, cliffs or ledges thereon; and carelessly and negligently failed to take any precaution to prevent the falling or precipitating of rock, boulders or earth upon said track; and carelessly and negligently suffered and permitted a large and heavy rock, which had become loosened and was about to fall, to remain in a dangerous and unsafe position on said hillside about three hundred and fifty feet distant from the center of defendant's track, which rock, and the dangerous and insecure position of the same, was in plain view of said track, and could have been known to the defendant by the exercise of reasonable care.

From a judgment in the sum of five thousand dollars, the company has appealed. The points mainly relied upon by the appellant to reverse the judgment are:

1.   The laws of New Mexico do not confer a right of action for the death of Warring under the circumstances disclosed by the complaint.

2.   The plaintiff has no legal capacity to sue.

3.   There was no proof of actual negligence on the part of appellant.

4.   Error in the giving and refusing of instructions.

The plaintiff introduced sections 3214, 3215, 3216 and 3218 of the Compiled Laws of New Mexico as the basis of her right of action. Counsel. for appellant contend that the supreme court of New Mexico has held that section 3214 does not apply to common carriers, and that section 3213 does apply; and that actions brought under 3213 must be brought in the name of the beneficiary mentioned in the statute, and not by the personal representative. In the case of *Romero v. A. T. & S. F. R. R. Co.*, 11 New

Mexico 679, the court did hold that section 3214 does not apply to common carriers, but that section 3213 does apply to common carriers, and that for causes of action arising under such section the legal representatives were not authorized to bring or maintain actions. We think that counsel for appellee is wrong in his contention that section 3214 applies as well to railway companies as to any other person or corporation, and we feel that we are bound by the construction placed upon the statutes of New Mexico by the supreme court of that territory. But we are of opinion that sections 3216 and 3218 of the Compiled Laws of New Mexico authorize this action by the representative of the deceased. Section 3216 is as follows:

"3216. Every corporation operating a railway in this territory shall be liable in a sum sufficient to compensate such employee for all damages sustained by any employee of such corporation, the person injured or damaged being without fault on his or her part, occurring or sustained in consequence of any mismanagement, carelessness, neglect, default or wrongful act of any agent or employee of such corporation while in the exercise of their several duties, when such mismanagement, carelessness, neglect, default or wrongful act of such employee or agent could have been avoided by such corporation through the exercise of reasonable care or diligence in the selection of competent employees or agents, or by not overworking said employees, or requiring or allowing them to work an unusual or unreasonable number of hours; and any contract restricting such liability shall be deemed to be contrary to the public policy of this territory and therefore void."

Section 3218 provides, in substance, that a cause of action arising under this section shall be brought by the personal representative of the deceased.

Counsel for appellant, we think, place too narrow a construction upon section 3216. The right is not general, but is limited to injuries occurring through mismanagement, carelessness, neglect, default or wrongful act of agents or employees, only when such mismanagement, carelessness, neglect, default or wrongful act could have been avoided by such corporation through the exercise of reasonable care or diligence in the selection of competent employees or agents, or by not overworking said employees or allowing them to work an unusual or unreasonable number of hours.

But we cannot place such construction upon the statute. We do not think the company can escape liability by showing that its employees are competent, or have not been overworked, or have not worked an unusual or unreasonable number of hours. The statute, it seems to us, requires not only that the company should select competent employees and provide reasonable hours for them to work, but should employ and select a sufficient number of competent employees to properly guard their track and inspect their machinery and appliances. We are therefore of opinion that the company is liable for damages to its employees under section 3216, if it should appear that a reasonable inspection of the company's tracks and the hillsides beyond its tracks would have prevented the injury, and that under that section it is necessary for the company to not only select competent employees, but to also select a sufficient number thereof to properly perform the duties assigned them.

The laws of New Mexico require actions of this character to be brought in the name of the personal representative of the deceased. In this state the personal representative has no right of action. In New Mexico the proceeds of any judgment obtained must

be distributed to the heirs of the deceased, as designated by statute. In Colorado the action accrues to the heirs, according to the preferences fixed by statute. Because of this difference between the statute of the place where the injury resulting in death occurred and the statute of the place where the action is brought, counsel insist that the action cannot be maintained by an administrator appointed in this state. It is now established by the overwhelming weight of authority that a statute creating a cause of action for the damages sustained by the relatives or next of kin of the deceased is not penal, and that the cause of action is transitory, and may therefore be enforced in any state or country whose public policy is not opposed to the recognition and enforcement thereof.—Wharton on the Conflict of Laws 1114.

It is also "established, both upon reason and authority, that the fund recovered is to be distributed to the persons entitled to it under the statute of the place where the cause of action arose, rather than to the persons who would be entitled according to the statute of the forum."—Wharton on the Conflict of Laws 1129.

Counsel for appellant say: "That a *domestic* administrator can never maintain a suit in his forum unless the following conditions exist: (a) The *lex loci* gives the right of action to the personal representative. (b) The *lex fori* permits a domestic administrator to collect, account for and distribute the fund as a part of the administration of the estate of his decedent."

It will be conceded that the action must be brought by the person designated in the statute of the place where the injury occurred, and not by the person designated by the law of the forum. There is a decided conflict of authority upon the question, and we shall not undertake to review the cases.

Wharton has this to say upon the subject: "While the weight of authority makes the existence of a similar statute of the forum a condition of jurisdiction of a cause of action arising under the statute of another state or country, the statute of the forum is invoked only for the purpose of removing any objection, based upon the public policy of the forum, to entertaining the action, and never, at least unless it expressly, or by necessary implication, extends to extra-territorial torts, for the purpose of creating a cause of action based upon a tort occurring outside of the forum. * * * The action must be brought by and in the name of the party designated by the statute of the state or country in which the cause of action arose, even though a similar statute of the forum provides that the action shall be brought by some other party. Thus, if the statute of the state or country where the cause of action arose provides that the action shall be brought directly by the beneficiaries, or some one of them, that provision prevails, notwithstanding that the statute of the forum provides that the action shall be brought by the personal representative. Conversely, if the statute of the state or country where the cause of action arose provides that the action shall be brought by the personal representative, it must be brought by such representative, even though the statute of the forum provides that it shall be brought directly by the beneficiaries. * * * When the *lex loci delicti* does not merely keep alive an action arising in favor of the deceased, but, like Lord Campbell's act, creates an entirely new right of action, and provides that it shall be brought by the personal representative for the benefit of the next of kin, or other specified beneficiaries, there is a decided conflict among the authorities as to whether a personal representative appointed at the forum may

maintain the action. Some of the cases have denied such right, upon the ground that the right which the statute gives to the personal representative of the deceased as a trustee for the beneficiaries is not of such a nature that it can be imparted to an executor or administrator appointed at the forum, *virtute officii.* The United States supreme court, however, has held that an administrator appointed at the forum may maintain the action, under such circumstances, and that view seems to be supported by the weight of authority."—Wharton on the Conflict of Laws 1126-35.

The case cited by Wharton is *Dennick v. Railroad Co.,* 103 U. S. 11. Mr. Justice Miller, delivering the opinion of the court, said:

"A party legally liable in New Jersey cannot escape that liability by going to New York. If the liability to pay money was fixed by the law of the state where the transaction occurred, is it to be said it can be enforced nowhere else because it depended upon statute law and not upon common law? It would be a very dangerous doctrine to establish, that in all cases where the several states have substituted the statute for the common law, the liability can be enforced in no other state but that where the statute was enacted and the transaction occurred. The common law never prevailed in Louisiana, and the rights and remedies of her citizens depend upon her civil code. Can these rights be enforced or the wrongs of her citizens redressed in no other state of the Union? The contrary has been held in many cases. See *Ex parte Van Riper,* 20 Wend. (N. Y.) 614; *Lowry v. Inman,* 46 N. Y. 119; *Pickering v. Fisk,* 6 Vt. 102; *Railroad v. Sprayberry,* 8 Baxt. (Tenn.) 341; *Great Western Railway Co. v. Miller,* 19 Mich. 305.

"But it is said that, conceding that the statute of the state of New Jersey established the liability of the defendant and gave a remedy, the right of action is limited to a personal representative appointed in that state and amenable to its jurisdiction.

"The statute does not say this in terms. 'Every such action shall be brought by and in the names of the personal representatives of such deceased person.' It may be admitted that, for the purpose of this case, the words 'personal representatives' mean the administrator.

"The plaintiff is, then, the only personal representative of the deceased in existence, and the construction thus given the statute is, that such suit shall *not* be brought by her. This is in direct contradiction of the words of the statute. The advocates of this view interpolate into the statute what is not there, by holding that the personal representative must be one residing in the state or appointed by its authority. The statute says the amount recovered shall be for the benefit of the widow and next of kin. Why not add here, also, by construction, 'if they reside in the state of New Jersey'?

"It is obvious that nothing in the statute requires such a construction. Indeed, by inference, it is opposed to it. The first section makes the liability of the corporation or person absolute where the death arises from their negligence. Who shall say that it depends on the appointment of an administrator within the state?

"The second section relates to the remedy, and declares who shall receive the damages when recovered. These are the widow and next of kin. Thus far the statute declares under what circumstances a defendant shall be liable for damages, and to whom they shall be paid. In this there is no ambiguity. But fearing that there might be a question as to the

proper person to sue, the act removes any .doubt by designating the personal representative. ˙The plaintiff here is that representative. Why can she not sustain the action? Let it be remembered that this is not a case of an administrator, appointed in one state, suing in that character in the courts of another state, without any authority from the latter. It is the general rule that this cannot be done.

"The suit here was brought by the administratrix in a court of the state which had appointed her, and of course no such objection could be made.

"If, then, the defendant was liable to be sued in the courts of the state of New York on this cause of action, and the suit could only be brought by such personal representative of the deceased, and if the plaintiff is the personal representative, whom the courts of that state are bound to recognize, on what principle can her right to maintain the action be denied?

"So far as any reason has been given for such a proposition, it seems to be this: that the foreign administrator is not responsible to the courts of New Jersey, and cannot be compelled to distribute the amount received in accordance with the New Jersey statute.

"But the courts of New York are as capable of enforcing the rights of the widow and next of kin as the courts of New Jersey. And as the court which renders the judgment for damages in favor of the administratrix can only do so by virtue of the New Jersey statute, so any court having control of her can compel distribution of the amount received in the manner prescribed by that statute.

"Again: it is said that, by virtue of her appointment in New York, the administratrix can only act upon or administer that which was of the estate of the deceased in his lifetime. There can be no doubt

that much that comes to the hands of administrators
or executors must go directly to heirs or devisees,
and is not subject to sale or distribution in any other
mode, such as specific property devised to individuals,
or the amount which by the legislation of most of the
states is set apart to the family of the deceased, all
of which can be enforced in the courts; and no rea-
son is perceived why the specific direction of the law
on this subject may not invest the administrator with
the right to receive or recover by suit, and impose
on him the duty of distributing under that law.
There can be no doubt that an administrator, clothed
with the apparent right to receive or recover prop-
erty or money, may be compelled to deliver or pay
it over to some one who establishes a better right
thereto, or that what he so recovers is held in trust
for some one not claiming under him or under the
will.   And so here.   The statute of New Jersey says
the personal representative shall recover, and the re-
covery shall be for the benefit of the widow and next
of kin.   It would be a reproach to the laws of New
York to say that when the money recovered in such
an action as this came to the hands of the adminis-
tratrix, her courts could not compel distribution as
the law directs.

"It is to be said, however, that a statute of New
York, just like the New Jersey law, provides for
bringing the action by the personal representative,
and for distribution to the same parties, and that
an administrator appointed under the law of that
state would be held to have recovered to the same
uses, and subject to the same remedies in his fidu-
ciary character which both statutes prescribe."

And it seems to be the rule in most states that,
unless there is some law of the forum which will
prevent the action from being maintained by the per-
son designated by the law of the place where the in-

jury occurred, it may be so maintained. Counsel say that the policy of our state concerning the distribution of money or property coming to the administrator is contrary to the policy of New Mexico, and that, as the statutes of the two jurisdictions are so dissimilar, we should not entertain this action. But the statutes are not so dissimilar, in our judgment, as to warrant the courts of this state declining jurisdiction. The policy of our state is practically the same as that of New Mexico in that damages may be recovered by the relatives or next of kin of a deceased person where his death has been occasioned by a negligent act of a railroad company, and we are of opinion that the better rule is that announced by Mr. Justice Miller in the case cited, and that actions of this kind may be maintained in this state by a personal representative, and that it is within the power of the courts of this state to direct the money recovered, if any, on the judgment to be distributed in accordance with the laws of New Mexico. Warring and his family were residents of the state of Colorado. The railroad runs for a very short distance through the territory of New Mexico and then back into this state. The statute of New Mexico and the statute of Colorado both provide that damages may be recovered for the death of a person occasioned by the negligence of a railroad company, and we believe that comity and right requires us to permit this administratrix to maintain the action in this state, and that it would be a reproach to the laws of Colorado to decline jurisdiction upon the ground that our courts could not compel distribution as provided by the laws of New Mexico.

The road of appellant runs through the canyon of the Navajo river. While in this canyon, on the night of March 9th, 1901, the locomotive engine on which Warring was riding overturned. He was caught un-

der the engine and was killed.   Some time before this a large rock had rolled down from the mountain side and struck the rails of appellant's track and displaced them.   It was this displacement of the rails that caused the engine to overturn.   Warring was a head brakeman and was riding in the cab of the engine, facing the rear of the train.   The company does not employ track walkers whose duty it is to regularly inspect the track at night.   It does employ track inspectors, and one of them passed over the place in the track where the rock came down, at 5:30 o'clock p. m.   The engine was overturned about 11:30 p. m. of the same day.   The rock that threw the rails out of alignment came from a point on the mountain side three hundred and fifty feet distant from the center of the track.   The company has a right of way one hundred feet on each side the center of its track. The testimony shows that the sides of the canyon through which the road runs are covered with brush and pinon trees, loose rocks, gravel, dirt; that the slope of the hill above the track where the rock came down is about 35 degrees.   The rock weighed about sixteen tons.   A few days before the accident another rock had rolled down the mountain side at or near this place.   The roadmaster of the company testified:   "We have had dirt slides at numerous times, but not rock that I know of, only on these two occasions."

The witness Ridgway, a civil engineer employed by the company, when asked:   "Is it not a fact   *   *   *   that you have more difficulty in the spring of the year by reason of these boulders rolling down the mountain sides, than at any other season of the year?" said, "I think that is what we usually expect in the spring."

The section foreman for the company testified: "The duty of a foreman of that section is to keep

the track in shape and clear. We are supposed to keep the right of way clear from rocks. I make a thorough inspection of the side cuts and side hills whenever anything looks suspicious. I do that frequently.''

''Q. You state if any rock ever came down while you were on that section?

''A. There was one came down previous to that. That was about fifty feet east of where this rock came down. After that rock came down I inspected the hillside to the top of the hill. It was about three weeks, I think, before this accident. I know where the rock that caused this accident came from. I think I went over the place when I made my examination in reference to the other rock. There was nothing there that attracted my attention to the rock which caused this accident. I was looking for loose rock and anything that might be loose. Rocks are most liable to fall in the spring of the year when the winter snow is going off. * * *

''Q. You have two rocks that came down in the night during the time that you know of?

''A. Yes, sir.

''Q. And one that is about three weeks before and fifty feet east of where the rock stood that derailed the train?

''A. Yes, sir. * * * I had two men on that section at the time. We worked from seven o'clock to twelve noon, and from one to six. We had seven miles to cover. On that day we were working on the west end. We came from the west end about 5:20; came into the section house at six. Passed over the point where the derailment occurred about 5:20. That was the last time we passed over it that evening.''

Mr. Ridgway testified: ''The reason I assigned for the falling of the rock was this: Almost the en-

tire portion of the cavity disclosed that there had been a seam in the sandstone ledge, being sparsely covered by earth and small pieces of sand, that had been there for a long time. The freshly fractured portion seemed to me to prevent the falling of the rock without some outside influence. I attributed the fall to the fact that water from the rain or snow had collected in this seam and had been there imprisoned, freezing and raising the left-hand portion so that it broke off, and the right-hand portion of the solid ledge then not being able to support it, it rolled down the hill.''

The witness Tiffany testified: ''From this examination we were able to determine to our satisfaction the point from which that rock started. We found fresh marks down the hill comparatively a straight line, indicating that the rocks had been ground or broken comparatively recently. * * * We followed this path until we reached a point where no more of these signs could be observed. At this point there were indications showing that something had stood at that place. The ground where this something had come from was fresh. Around the upper edges of it were small plants hanging by their roots, showing that something had been removed from that place. The foundation, or bed, upon which this rock was resting was earth and loose rock. * * * I concluded from our examination that this rock had not been attached to any other rock prior to its fall. That hillside is solid rock in places, boulders, small rocks, earth, trees, brush, etc. There are large rocks also lying upon the hillside. There was nothing to prevent the point, from which this rock apparently came, from being seen by any person passing along the railroad track and inspecting the sides of the hill, if you got in the right position. It could be seen from the railroad track, immediately below it, in the

path of the rock. Standing at the point where the rock came from, I could see the railroad track immediately below and at other places."

The roadmaster of the defendant testified: "The men on that section were supposed to work from seven a. m. to six p. m., and one hour for dinner. There were no track walkers employed regularly on that section at that time."

Several photographs of the place where the accident occurred, and of the place where the rock that came down was lodged, were used at the trial. We are of opinion that it was the province of the jury to determine whether the company had fulfilled its obligation to its employees to exercise ordinary care in the maintenance of its track and roadbed. In a similar case, before the United States circuit court of appeals, Mr. Justice Thayer, rendering the opinion of the court, said:

"It is an elementary rule that a railroad company is under an obligation, both to its employees and to the traveling public, to exercise ordinary care both in the construction and maintenance of its track and roadbed, to the end that they may be reasonably safe for the passage of trains; and the proper discharge of that obligation makes it the duty of a railroad company to be observant of all objects in close proximity to its track, which in the ordinary course of events may impair its safety. If rocks overhang its track, or loose rock is imbedded in the slope of cuts through which its track runs, in such a position that they may be displaced by the ordinary action of the elements, and precipitated upon its track, it should either remove them, or take other adequate precautions to guard against the danger, and render its track reasonably safe. In the case in hand we are unable to say that all reasonable men, listening to the evidence which was adduced at

the trial, would have concluded that the receiver had performed his full duty with respect to caring for the safety of the track intrusted to his charge, and was not chargeable with any negligence. The rock which occasioned the accident was known to be a loose rock. It was also known to be imbedded in slide or wash on the face of a steep slope, and that it was of enormous weight. It did not rest upon a secure foundation, it was certain to fall sooner or later, and its descent was sure to wreck the track, and might occasion great loss, both of life and property. Besides, the continuous action of frost and floods, and the vibration caused by moving trains, would have a tendency to render it more insecure each year unless it rested upon a rock foundation. In view of these considerations, and in view of the fact that the evidence showed that the track through the canyon was not patrolled at night, although trains ran at night as well as by day, it is very probable, we think, that many persons would have reached the conclusion that in the exercise of ordinary care the defendant should have ascertained with greater certainty upon what sort of a foundation the rock rested, and should not have trusted to a casual examination, made hastily and at intervals from the platform or window of a moving train."—*Clune v. Ristine*, 94 Fed. Rep. 745.

The rock in the case at bar came from a point on the slope of the mountain outside of the right of way of the company. It was plainly visible from the track, however; and the character of it was, or should have been, known to the company. We do not think the obligation of the company ends with an inspection of its right of way. Objects beyond its right of way may be quite as menacing and dangerous as those within; and the company is not relieved of its obligation by showing that the rock came from a place

on the mountain beyond its right of way. A week or so before, another rock came down in the night and injured materially the company's track, and from a place not far distant from the rock in question Not long before, but in the same canyon, a large quantity of dirt and small rocks had come down, completely covering the track. Witnesses and employees of the company testified that in the spring these disturbances were more likely to occur; yet the company, it was shown, did not have the track patrolled at night. There was no inspection of the track at this place after about five o'clock in the afternoon before the accident. We are of opinion that the question of negligence should have been submitted to the jury.

The instructions numbered 4, 5, 6, 7, 8, 9, 10 and 12 are especially objected to.

Instruction No. 4, it is said, is directly contrary to the law as announced in *Last Chance M. & M. Co. v. Ames*, 23 Colo. 167. We do not so read the instruction. The jury were told that, "if you believe that any witness has willfully testified falsely to any material fact in the case, you may disregard the whole of his or her testimony." This is in perfect harmony with the decision in the case mentioned, and not contrary to the law as therein announced.

It is claimed that by instruction No. 5, the jury is authorized to go outside the evidence, and that "it is perfectly apparent that the jury availed themselves of this permission thus given and rested their verdict upon theory and conjecture rather than upon facts established by the evidence." The jury was instructed: "You have a right, in elucidating or explaining the testimony and arriving at your verdict, to take into consideration any knowledge which you may have which is common to mankind generally, touching the matters testified about." This only permits the jury to use the knowledge common to

mankind, and does not authorize it to go beyond the
evidence.   Moreover, in another instruction, the jury
was instructed that it was their sworn duty to be
guided by the evidence.   We do not agree with coun-
sel that the jury rested its verdict upon theory and
conjecture rather than upon the facts established, for
it is our opinion that the verdict is supported by the
evidence.

Instruction No. 7 charges the jury as follows:

"It seems by the testimony that the defendant
met with his death on the 9th day of March, 1901.
If you find from the evidence that this was a season
of the year when the defendant company knew, or
by the exercise of ordinary care, prudence and fore-
sight, it should have known, that freezing and thaw-
ing of the earth and snow on the south slope of the
mountain was going on, and that by reason thereof
boulders and rocks were more liable to become
loosened and slide or roll down the mountain side on
to the track at, or in the vicinity of, the place where
Warring was killed, then it was the duty of the de-
fendant company to be more watchful and careful to
see that its roadway and track were safe for the pas-
sage of trains and its employees in charge thereof.
And if you find from the evidence that the character
of the country was such at and in the vicinity of the
point in question that it was necessary to have track
walkers at night in order to reasonably protect the
passage of its trains and employees in charge thereof
from danger, then it was the duty of the defendant
company to provide such night inspectors, or track
walkers, and if it failed in this particular, and did
not use reasonable and ordinary care and prudence
in protecting the passage of its trains and the em-
ployees in charge thereof against such dangers as
caused Warring's death, and did not so protect the
train upon which Warring was riding, and Warring

was killed by reason thereof, then your verdict should be for the plaintiff, unless you further find from all the evidence that he was guilty of contributory negligence which materially contributed to his death, or that he assumed the risk."

It is insisted that this instruction, aside from erroneously assuming certain conditions to have been shown by the evidence, submits to the jury the question whether the company should have employed track walkers immediately ahead of the particular train on which the deceased rode. It was the duty of the company to use such means as were necessary to maintain its track and roadbed in such condition that they were reasonably safe for the passage of trains. That the track of the company was not in condition for the passage of the train on which Warring rode, cannot, of course, be disputed. It was shown by the testimony that the company had made no inspection of the track for about six hours prior to the accident. If the duty of patrolling the track or making such other inspection for the purpose of protecting the passage of its trains devolves upon the company, it devolves upon it to protect each train, and the statement contained in the instruction, "and did not so protect the train upon which Warring was riding," we do not regard as erroneous. The instruction is supported by the evidence, and no error was committed in so charging the jury.

In instruction No. 8, this clause is found: "And if you find from all the evidence * * * that the defendant company, in the exercise of ordinary care, prudence, and foresight, could have reasonably apprehended that boulders were liable to roll down from the mountain side on to the track, and that any track walkers in that immediate vicinity, in passing over the point in question in front of this train, might have discovered that the boulder or rock had rolled down

* * * and warned the train in time to have avoided the injuries."

Counsel say that by the use of the word *might,* a higher degree of care was required of the company than the law imposes. We do not think the jury was misled into granting a verdict for the plaintiff upon the theory that the company was liable, if by any possible contingency it could have discovered the rock in question in time to have warned the train upon which Warring was riding. The use of the words "might have discovered," etc., have no greater significance, we think, than the words "would have discovered," taken in connection with the testimony and the other instructions. Moreover, the defendant used the same expression in an instruction tendered by it.

The testimony showed that the company, although it ran trains at night, did not provide for the inspection of its track at night; that no employee of the company had been over the track after about five o'clock in the afternoon previous to the derailment of the engine. Whether the failure to inspect its track was or was not negligence, was a question for the jury to determine, and the jury was told that if it found from the evidence that in the exercise of ordinary care on the part of the defendant company to protect the passage of its trains, it was necessary to have track walkers in front of this train in order to protect it and the employees in charge thereof, and that there were no such night track walkers or night inspection, and that by reason thereof Warring met his death, "then your verdict should be for the plaintiff, unless," etc.

In instruction No. 9 the jury was told that it should decide whether the deceased had or had not assumed the risk of a boulder rolling down the mountain side and injuring the track. The court observed that the law excuses a master when the injury results

to the servant from the ordinary hazards which are incident to the nature of the employment, and not from a cause which the master, by the exercise of proper care and prudence, could have foreseen and guarded against.

In the recent case *D. & R. G. R. R. Co. v. Burchard,* 35 Colorado 539, this court quoted with approval from *Yeaton v. Boston & Lowell Railroad,* 135 Mass. 41, the following: "The general rule of law, that a servant takes upon himself the risk of the dangers which ordinarily attend or are incident to the business in which he voluntarily engages, is well settled and undisputed."

In the *Burchard case* it was held that, as the danger was not so obvious as to warrant the court in declaring as a matter of law that the deceased assumed the risk, the question was properly submitted to the jury.

The court, in instruction No. 10, charges the jury that if, at the time Warring met his death, he was riding in such a position, upon the engine, as head brakemen usually assume in the discharge of their duty, and that such place was a reasonably safe one for the brakeman to assume, then the mere fact of his riding in the engine would not be such contributory negligence as to defeat a recovery. This instruction, it is said, ignores the company's rules, and is erroneous "in that it permits the jury, without appropriate proof, to abrogate the company's rule for the benefit of the deceased, and to make the deceased servant himself the judge of the circumstances under which he was under the duty of allegiance to the rule." Counsel say: "It is perfectly true that an employer's rule may be suspended, or, indeed, abrogated, provided it is customarily violated with the knowledge or assent, express or implied, of the officers of the company."

But we have no rule of the company before us. No rule of the company was offered in evidence, nor was any instruction tendered, covering the subject.

Instruction No. 12 declares that if the jury should find that the defendant, in the exercise of reasonable and ordinary care, could not have discovered that the rock in question was liable to fall upon its track, that the plaintiff is not entitled to recover, unless it further finds that the defendant was negligent in not properly inspecting its track prior to the passage of the train, and that such negligence was the proximate cause of the injury. We do not regard this instruction as erroneous. It is not materially different from instruction No. 4, offered by the defendant.

The following appears in instruction No. 6: "The company should have used all reasonable precaution and ordinary care to secure the safety of its employees by keeping a sufficient force at command, and of sufficient capacity, to keep its roadway reasonably safe for the passage of its trains and the employees in charge thereof. It cannot, for want of watchfulness, expose its employees to unreasonable risk and escape liability; but the duty imposed is that of ordinary care. The ordinary care required must be measured by the danger of the service and proportioned by it."

This is objectionable, it is claimed, because it advised the jury, in effect, that the sole and principal end and aim of the operation of a railroad is the safety of its employees. The instruction, in our opinion, is not erroneous. It is the duty of the railroad company to use all reasonable precaution to secure the safety of its employees, and to keep a sufficient force at command to keep its roadway reasonably safe for the passage of its trains and the em-

ployees in charge thereof, and this was what the court advised the jury.

One of the instructions offered by the defendant was modified. The modification consisted in inserting the word "ordinary" before the word "risk," so that the jury was advised that the deceased "assumed the ordinary risks and dangers due to the fact that the line ran along the foothills, and would of necessity be subject to the possibility of obstructions being cast upon the track from adjacent mountains." In the Burchard case, cited, it was held that the employee assumes the ordinary risks of his employment; and we think there is no merit in the objection that the instruction offered was erroneously modified. The instruction was also modified by advising the jury that the deceased did not assume the risks arising from negligence or want of reasonable care on the part of defendant, in inspecting its track or maintaining it in proper condition. Authorities cited with approval in the case, *D. & R. G. R. R. v. Burchard,* hold that the employee assumes the risks of the service in which he voluntarily engages, but does not assume the risks of the service caused by the employer's negligence. It is stated, in *Colorado Central R. R. Co. v. Ogden,* 3 Colo. 502, cited with approval in *A., T. & S. F. R. R. Co. v. Farrow,* 6 Colo. 498, that the servant takes upon himself "the ordinary and usual hazards of his employment over which his employer has but little or no control, and against which he is best situated and best able to guard. Knowing the perils of the employment in which he engages, he is presumed to contract with reference to them and to demand and receive a compensation which covers them. * * * Qualifying the foregoing rule is the further rule that risks arising from the negligence of the master are not in-

cluded among those which the servant is presumed to assume.''

The modifications have the support of the decisions of this court, and are not erroneous.  Moreover, in request No. 11 the court gave a similar instruction.

The charge to the jury is quite long and shows evidence of much care in its preparation.  On the whole, it is fair and just to the defendant.  The case is fairly covered by the instructions given, and no error is perceived in refusing instructions offered by defendant.  The jury must have found that it was necessary for the defendant, in the exercise of ordinary care and prudence, to guard against an injury to its track such as occurred.

For the reasons given, the judgment is affirmed.

*Affirmed.*

CHIEF JUSTICE GABBERT and Mr. JUSTICE CAMPBELL concur.