No. 12,075.

Denver and Salt Lake Railway Company *v.* Mullen.

Decided June 10, 1929.

Messrs. SMITH & BROCK, Mr. DAVID W. OYLER, for plaintiff in error.

Mr. EDWARD M. AUSLENDER, for defendant in error.

*En Banc.*

MR. JUSTICE MOORE delivered the opinion of the court.

PARTIES are referred to as they appear in the lower court.

On February 12, 1926, the plaintiff, a brakeman in the employ of defendant lost an arm as the result of an accident. He sued the railroad company for damages and recovered a judgment of $12,500, to review which the railroad company now prosecutes error, contending, among other specifications, that the trial court was wrong in refusing to grant a motion for a nonsuit and a motion for a directed verdict for the defendant and in

refusing to give certain instructions. Both motions are based upon a charge that the plaintiff wholly failed to show that the defendant was guilty of negligence as charged in the complaint or any negligence.

The complaint alleged: "That there was then and there by reason of the negligence, carelessness, wrongful, and unlawful conduct of said Receivers an obstruction, to-wit: rock, upon the track, roadbed, and right of way along which said train was moving; and that said Receivers then and there failed and neglected to keep their roadbed and right of way clear and in safe condition. That at said time and place said Receivers negligently, carelessly, wrongfully and unlawfully, without any notice or warning whatsoever to plaintiff of the contemplated move, caused said train of cars to be stopped with violence and great suddenness."

The evidence discloses that plaintiff was head brakeman on defendant's freight train which was proceeding westward in the dark, the Colorado river on its left and a mountain side on the right. It had passed through a cut and was entering a side track at a station called Orestod, in order to permit an approaching train to pass. The plaintiff was standing on top of an oil tank car, the sixth from the engine, the conductor, Blackshear, was on the ground on the mountain side of the track near the side track switch. The latter observed sparks under some of the cars toward the rear end of the train and saw that some of the car trucks were derailed. At the time these observations were made, the conductor was not in a position to signal the engineer or the head brakeman. He ran toward the caboose and yelled to the rear brakeman to "pull the air." The emergency brake valve in the caboose was applied, whereupon the train came to a sudden stop, plaintiff was thrown from the car and his left arm caught under a wheel and almost severed.

The evidence further discloses that after the train had

started to pass or was passing into the side track, a mass of rock and debris fell from the side of the mountain in a cut east of and close to the passing track switch; that a large boulder approximately three feet long and two feet thick and wide, a part of this mass, fell under the train, was dragged for a considerable distance, approximately 900 feet, and finally caused the derailment of two of the tank cars near the rear of the train. The exact point where this rock started to fall is not disclosed. The evidence demonstrates the fact that the rock and rock slide started from some point above the top of said cut and at least 150 feet from the track.

The evidence further discloses, as to the sudden stop of the train, that the engine is equipped with a brake valve used in stopping the train which can be operated in six positions controlling the degree of application of air; that in the caboose an emergency brake valve is located to be used only in case of emergency and having only two positions, opened or closed; that the operation of the emergency brake valve produces a sudden, jerking stop, while the operation of the engine brake valve could bring the train to a stop without jar or jerk. Plaintiff contends, notwithstanding an emergency existed, that, in the exercise of reasonable care, the train could have been stopped without injury to plaintiff.

We shall consider the alleged acts of negligence as they are discussed in plaintiff's brief. One, the rock, and two, the sudden stop.

█ 1. The engine and several of the cars had passed beyond the point where the rocks fell, and until then the roadbed and tracks were free from an obstruction. The mere fact that there was a rock slide was insufficient to show defendant's negligence. In addition, it was necessary for the plaintiff to prove that said slide directly resulted from the failure of the defendant to exercise reasonable precaution to prevent it. The testimony of defendant's section foreman and road-

master shows that they and the men under them were diligent in their examination of the roadbed, right of way and the adjoining hillsides to ascertain the condition of the same and the probability of dangerous, threatening or impending rock slides and in their efforts to prevent them. The testimony shows that there had been rock slides previously in that section, but never in this particular cut. The track at this point had been patrolled the day before and no evidence of any threatening rock slide was apparent. There was a rock slide, but there was no evidence showing why or how it happened; or that the defendant knew, or in the exercise of reasonable care should or could have known, that it was about to happen; or that defendant, in the exercise of reasonable care, could have prevented it.

Counsel for plaintiff strenuously contends that the decision of this case should be controlled by $\dot{D}$. & R. G. R. R. Co. v. Warring, 37 Colo. 122, 86 Pac. 305. The facts there disclosed that Warring, a brakeman for the railroad company, lost his life as the direct result of a collision between the train and a mass of rock upon the track ahead of the engine. The complaint charged that the defendant "carelessly and negligently suffered and permitted a large and heavy rock, which had become loosened and was about to fall, to remain in a dangerous and unsafe position on said hillside about three hundred and fifty feet distant from the center of defendant's track, which rock, and the dangerous and insecure position of the same, was in plain view of said track, and could have been known to the defendant by the exercise of reasonable care." The court held, under the evidence, that the case was for the jury, and on page 141, states: "The rock in the case at bar came from a point on the slope of the mountain outside of the right of way of the company. It was plainly visible from the track, however; and the character of it was, or should have been, known to the company. We do not think the obligation

of the company ends with an inspection of its right of way. Objects beyond its right of way may be quite as menacing and dangerous as those within; and the company is not relieved of its obligation by showing that the rock came from a place on the mountain beyond its right of way. A week or so before, another rock came down in the night and injured materially the company's track, and from a place not far distant from the rock in question. Not long before, but in the same canyon, a large quantity of dirt and small rocks had come down, completely covering the track. Witnesses and employees of the company testified that in the spring, these disturbances were more likely to occur; yet the company, it was shown, did not have the track patrolled at night. There was no inspection of the track at this place after about five o'clock in the afternoon before the accident. We are of opinion that the question of negligence should have been submitted to the jury.''

Undoubtedly, under the pleadings and evidence, this was a correct ruling, but is not applicable to the facts in the instant case. Here there was an entire absence of evidence of previous rock slides in the same cut; of the reason for or origin of the rock slide in evidence; of existing dangerous conditions from which it could be determined that a rock slide there threatened.

■ 2. Plaintiff contends that the train should have been brought to a stop in a manner which would have prevented his being thrown from the cars and that the failure so to do was negligence.

All witnesses concede that the derailment of cars constitutes an emergency; that in an emergency it is proper to use the emergency brake in the caboose. However, several of the witnesses, including the plaintiff, testified that, under the circumstances in evidence, they would have attempted to use the emergency brake in such manner as to bring the train to a stop gradually, thus preventing the sudden jerk and consequent injury to plain-

tiff. It is true that the evidence discloses that the railroad had adopted a rule that the emergency brake in the caboose should be used only in case of emergency and when so used opened wide. While this rule undoubtedly was adopted for the purpose of protecting the company's property and the lives of its employes, it cannot be said, as a matter of law, that a compliance therewith operated to absolve the railroad company from liability for injuries incurred as the result of its use when there is testimony by trainmen that, under the circumstances in evidence, in order to protect the plaintiff from injury, the emergency valve could and should have been operated in a different manner. This question of negligence as to the sudden stop, under the evidence, was one of fact for the jury.

■ The case was submitted to the jury upon both alleged acts of negligence, with the direction that if the jury found that the defendant was guilty of either of said alleged acts of negligence, the plaintiff could recover. There being sufficient evidence of negligence in connection with the sudden stop of the train to go to the jury, it was not error for the court to deny defendant's motion for a nonsuit and a directed verdict for the defendant.

■ There being no sufficient evidence on the question of defendant's negligence, as to the rock slide, to go to the jury, it was error for the court to refuse to give defendant's offered instructions Nos. 10 and 11, which withdrew this alleged act of negligence from the consideration of the jury.

■ The jury having found for the plaintiff upon instructions by the court that they could so find if either of the alleged acts of negligence had been proven by a preponderance of the evidence, it is impossible to determine whether the jury found the defendant guilty of one, and if so which one, or both of said alleged negligent acts. If their verdict was based upon a finding that the defend-

ant was negligent in connection with the rock slide, the verdict was wrong.

Therefore, the judgment of the lower court must be and is reversed and remanded with directions that a new trial be granted in harmony with the views expressed herein.