Marie **BANNOWSKY**, Plaintiff,

v.

William J. **KRAUSER**, and **Community Hospital of Durango**, Defendants.

Civ. A. No. C–1010.

United States District Court
D. Colorado.

Jan. 16, 1969.

Palmer & Frost, Farmington, N. M., and Walter L. Gerash, Denver, Colo., for plaintiff.

Yegge, Hall, Treece & Evans, by Richard D. Hall and Ronald K. Griffith, Denver, Colo., for defendant William J. Krauser.

Hansen, Madden & Strate, by William J. Madden, Denver, Colo., for defendant Community Hospital of Durango.

## MEMORANDUM OPINION AND ORDER

WILLIAM E. DOYLE, District Judge.

In this malpractice-wrongful death suit, the plaintiff-widow seeks recovery against the defendant, a surgeon, and the Durango hospital, on account of the alleged wrongful death of her husband. The defendant Krauser has moved to strike from the complaint the demand for damages which exceeds $35,000.00, which limitation exists in the Colorado wrongful death statute.

The alleged wrongful acts occurred in Durango, Colorado at the hospital there, and complaint is made that the defendant Krauser subjected the decedent to surgery, notwithstanding that he had circulatory problems which posed a hazard of death.

In demanding the sum of $250,000.00, plaintiff contends that this Court should apply the New Mexico wrongful death statute which does not have a damage limitation, and disregard the Colorado law. In essence, it is argued that it would be unjust to recognize the orthodox conflict of laws rule applicable to tort actions whereby the law at the place where the injury occurs governs. The principle urged is that injustice results from this somewhat mechanical doctrine, and that the Court should look to the important contacts approach which includes the place where the injury occurred, the place where the conduct occurred, the domicile of the parties, place where the relationship is centered, and the nature and character of the tort, among other tests. This is often described as the "assessment of the center of gravity" or "grouping of contacts" theory of choice of law. Therefore, the governing issue is whether New Mexico or Colorado law is to be applied.

 Ordinarily, of course, a federal trial court is required to follow the conflict of laws rule of the state in which it is sitting. Klaxon Co. v. Stentor Elec. Co., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). The applicable Colorado rule is that the substantive law where the tort occurred applies. See Pando v. Jasper, 133 Colo.

321, 295 P.2d 229 (1956). And in wrongful death actions, Colorado applies the law of the state where the death occurred. See Burlington Transportation Co. v. Stoltz, 191 F.2d 915, 917 (10th Cir. 1951); Stoltz v. Burlington Transportation Co., 178 F.2d 514, 515, 15 A.L.R.2d 759 (10th Cir. 1949); Drake v. Hodges, 114 Colo. 10, 161 P.2d 338, 340 (1945); Denver & R.G.R.R. v. Warring, 37 Colo. 122, 86 P. 305 (1906). Therefore, if the conflicts rules of Colorado are followed, the maximum recoverable amount is $35,000.00, and the motion to strike must be granted.

Plaintiff does not dispute the state of the Colorado law. She urges though that we depart from it and project the Colorado law of the future as it has been enunciated in Restatement Second of Conflicts of Laws, tentative draft number 9, § 379, and in recent decisions.[1]

 The difficulty is that we are not presented with any evidence which would indicate that the Colorado Supreme Court is likely to embrace this new conflict of laws principle. In the absence of such evidence, it would be highly presumptuous for this Court, sitting as a state trial court in a diversity suit, to anticipate this change. We are compelled to follow existing law and not shunt it aside in favor of a rule which we might regard as more just and flexible.[2] Recent federal decisions have

[1] See, e. g., Watts v. Pioneer Corn Co., 342 F.2d 617, 620 (7th Cir. 1965); Babcock v. Jackson, 12 N.Y.2d 473, 240 N.Y.S.2d 743, 191 N.E.2d 279, 283–284, 95 A.L.R. 2d 1 (1963); Griffith v. United Airlines, Inc., 416 Pa. 1, 203 A.2d 796, 805–806 (1964). The approach announced in the tentative draft of the Restatement Second of Conflicts of Laws, § 379, provides:
(1) The local law of the state which has the most significant relationship with the occurrence and with the parties determines their rights and liabilities in tort.
(2) Important contacts that the forum will consider in determining the state of most significant relationship include:
(a) the place where the injury occurred,
(b) the place where the conduct occurred,

(c) the domicile, nationality, place of incorporation and place of business of the parties, and
(d) the place where the relationship, of any, between the parties is centered.
(3) In determining the relative importance of the contacts, the forum will consider the issues, the character of the tort, and the relevant purposes of the tort rules of the interested states. Restatement (Second) of Conflicts of Laws § 379 (Tent. Draft No. 9, 1964).

[2] Bernhardt v. Polygraphic Co. of America, 350 U.S. 198, 205, 76 S.Ct. 273, 277, 100 L.Ed. 199 (1956); Klaxon Co. v. Stentor Elec. Co., supra; Polk County, Georgia v. Lincoln Nat'l Life Ins. Co., 262 F.2d 486, 490 (5th Cir. 1959).

properly held, as we view it, that the duty to follow existing law is a duty which is absolute and which prohibits a change of existing conflicts rules in advance of action by the state courts.[3] We do not rule out the possibility that in a particular instance the evidences of change might justify a projection. This is not, however, such a case. The existing Colorado law is positive and clear. Accordingly, we conclude that it applies to the instant case, and that the statutory maximum limits the amount of the recovery here. The result is that any and all amounts in excess of the $35,000.00 limit must be stricken.

■ In closing, it is to be noted that the present case is not a favorable one in any event for the choice of New Mexico law over Colorado law, assuming that the plaintiff is in a position to make such a choice. This is not a situation such as existed in the cases cited, whereby one state's interest existed only because the accident fortuitously occurred within its borders.[4] Not only did the accident occur here, but, in addition, the defendants reside in Colorado, and, really, the only contact that New Mexico has with the injury is the residence of the plaintiff in that State. Colorado is the place where the relationship is centered. The conduct and the injury occurred here, and consequently it would be nothing short of arbitrary to apply New Mexico law. It would be for the obvious purpose of furnishing the plaintiff with a more liberal measure of damage. On the other hand, the limitation contained in the Colorado statute is a deep-rooted local policy which should not be ignored on a flimsy basis such as that which is here offered.

It follows, therefore, that the same result would obtain regardless of whether the orthodox or what might be termed the modern approach is employed.

The motion to strike is granted.

3. See, e. g., Goranson v. Capital Airlines, Inc., 345 F.2d 750, 752–753 (6th Cir. 1965) (wrongful death); Fry v. Lamb Rental Tools, Inc., 275 F.Supp. 283, 285 (W.D.La.1967) (wrongful death); Satchwill v. Vollrath Co., 293 F.Supp. 533 (E.D.Wis. November 19, 1968) (wrongful death). Contra, Watts v. Pioneer Corn Co., 342 F.2d 617, 620 (7th Cir. 1965); Gianni v. Fort Wayne Air Service, Inc., 342 F.2d 621 (7th Cir. 1965). A distinguishing aspect of these two cases is that the Indiana Supreme Court had previously applied a significant interest approach in a contract action. Barber Co. v. Hughes, 223 Ind. 570, 63 N.E.2d 417, 423 (1945). Colorado, however, follows the traditional view that the law of the state where the contract is made governs. Gossard v. Gossard, 149 F.2d 111, 112 (10th Cir. 1945).

4. See, e. g., Pearson v. Northeastern Airlines, Inc., 309 F.2d 553, 92 A.L.R.2d 1162 (2d Cir. 1962); Kilberg v. Northeastern Airlines, Inc., 9 N.Y.2d 34, 211 N.Y.S.2d 133, 172 N.E.2d 526 (1961); Griffith v. United Airlines, Inc., supra. The court in *Kilberg* stated the rationale of these decisions:

> Modern conditions make it unjust and anomolous to subject the traveling citizen of this State to the varying laws of other States through and over which they move. * * * An air traveler from New York may in a flight of a few hours' duration pass through several of those commonwealths. His plane may meet with disaster in a State he never intended to cross but into which the plane was flown because of bad weather or other unexpected developments, or an airplane's catastrophic descent may begin in one State and end in another. The place of injury becomes entirely fortuitous. 211 N.Y.S.2d at 135, 172 N.E.2d at 527.