No. C-317

First National Bank in Fort Collins, as Guardian of Mickey Allen Hornbacher, Ronna Lea Hornbacher, Scott F. Hornbacher, Shannon Sue Hornbacher v. Shirley L. Rostek, Administratrix of the Estate of John E. Rostek

(514 P.2d 314)

Decided September 24, 1973.

Hoffman and McDermott, Gene M. Hoffman, for peti-
tioner.

Hill and Hill, Blunk, Johnson & Allspach, Forrest Blunk, for respondent.

*En Banc.*

MR. CHIEF JUSTICE PRINGLE delivered the opinion of the Court.

This case arises out of events surrounding a tragic airplane accident which took the lives of Carol Hardin Rostek and her husband, John E. Rostek. The First National Bank in Fort Collins, plaintiff below (petitioner herein), is the guardian of the natural children of Carol Hardin Rostek. The respondent is the administratrix of the estate of John E. Rostek.

Pursuant to 1967 Perm. Supp., C.R.S. 1963, 41-1-3, petitioner filed a wrongful death action in Colorado district court alleging that negligent operation of the aircraft on the part of John E. Rostek caused the accident and the ensuing death of his guest-passenger, Carol Hardin Rostek.

The respondent filed a motion for summary judgment alleging the rights of the parties are governed by the South Dakota Aircraft Guest Statute, S.D.C.L. 1967, 50-13-15. This South Dakota statute requires proof by the guest-passenger of *willful* or *wanton* misconduct on the part of an operator of an aircraft.

For purposes of the summary judgment motion the parties stipulated that *at most* the petitioner's evidence would show simple negligence on the part of John Rostek. The parties also stipulated that John and Carol Rostek were both citizens and residents of the state of Colorado, and that Carol Rostek's natural children, who are her sole heirs at law, resided with her in Colorado. With respect to the events in question, the stipulation stated:

"That on or about December 29, 1969, John E. Rostek, deceased, accompanied by his wife, Carol Hardin Rostek, deceased, took off from Colorado enroute to Iowa and Vermillion, South Dakota. That the Rosteks intended to remain in Vermillion, South Dakota, overnight, but after

ascertaining that a board of directors meeting could not be held that evening decided to return to Fort Collins the same night.

"That the Rosteks took off in their twin engine plane that evening from Harold Davidson Airport, Vermillion, South Dakota. That two days later, the plane was found approximately 500 feet from the end of the runway."

The trial court granted the respondent's motion for summary judgment and held:

". . . The parties have agreed that if the trial court is to adopt the law of the place of the wrong, lex loci, the case must be dismissed. If the Court is to adopt the law in which the trial is held, lex fori, the motion must be denied.

"The law in Colorado is that the claim is governed by lex loci delicti, rather than lex fori. *Pando v. Jasper,* 295 P.2d 229 and *Bannowsky v. Krauser,* 294 F. Supp. 1204."

The petitioner then petitioned this court, pursuant to C.A.R. 50, for a writ of certiorari to review the summary judgment of the trial court. We granted certiorari for the sole purpose of determining if Colorado courts are compelled to apply the doctrine of *lex loci delicti* (the law of the place of the wrong), under the facts and circumstances of this case.

I.

A brief review of Colorado case law convinces us that the issue presented in this case has in reality never been previously decided by this court, and that the doctrine of *lex loci delicti* appears in Colorado law more by default than by design.

In both *Atchison T. & S.F.R. Co. v. Betts,* 10 Colo. 431, 15 P. 821 (New Mexico law applied where a suit was brought for the killing of plaintiff's mule by defendant railroad in New Mexico) and *Denver & R.G.R. Co. v. Warring,* 37 Colo. 122, 86 P. 305 (New Mexico law applied to determine if legal action by a personal representative of deceased was proper when accident occurred in New Mexico), the question of whether any rule other than *lex loci delicti* should be applied was never raised. In both cases the court applied the law of the place of the wrong without recognition of the choice of

law issue and without a discussion of any choice of law doctrine. This is, of course, typical of cases from all jurisdictions in the days when *A.T. & S.F.* and *D. & R.G.R.* were decided. *Lex loci delicti* was accepted doctrine then and none challenged it or gave any thought to its justification or its fairness.

The only Colorado case which expressly mentions the doctrine of *lex loci delicti* is *Pando v. Jasper,* 133 Colo. 321, 295 P.2d 229, cited by the trial court in the instant case to support its summary judgment. In *Pando* an accident had occurred in Kansas and the suit was brought in Colorado. In the process of addressing the issue of whether the Kansas guest statute had to be proven like other facts at trial, the court assumed that the claim was governed generally by Kansas law under the doctrine of *lex loci delicti.* This reference to *lex loci delicti* is unquestionably *dicta,* and the court reached this conclusion without citing any previous Colorado cases as precedent. Further, in *Pando,* as in previous cases where the court applied the law of the place of the wrong, no issue was raised concerning the applicability or scope of the doctrine of *lex loci delicti* or any other choice of law rule.

Thus, this court in effect has not previously been confronted with the issue of the propriety and the justice of the doctrine of *lex loci delicti,* nor has this court previously held that such a broad rule unfailingly applies in all multistate controversies.[1] We conclude, therefore, that *stare*

---

[1] The defendant and the trial court both rely heavily on *Bannowsky v. Krauser,* 294 F. Supp. 1204 (1969). *Bannowsky* was a diversity case wherein the plaintiff, a resident of New Mexico, brought a wrongful death action in the federal district court in Denver against a Colorado resident, for an accident which occurred in Colorado. The district court concluded it was required by *Pando v. Jasper, supra,* to apply the substantive law of the place where the death occurs in wrongful death actions. The district court's decision, however, is not binding on this court, it being well settled that a state court is not bound by federal court interpretation of state law. *See* 28 U.S.C. 1652; *Nolan v. Transocean Air Lines,* 365 U.S. 293, 81 S.Ct. 555, 5 L.Ed.2d 571; and *Erie R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed.2d 1188, *White-Rodgers Co. v. Dist. Court,* 160 Colo. 491, 418 P.2d 527.

*decisis* does not compel this court to apply the rule of *lex loci delicti* without regard to the facts and circumstances in the particular case. Instead, this court must decide, as a matter of first impression, whether the broad rule of *lex loci delicti* should be adopted and applied to this case, or whether a more flexible choice of law rule should control.

II.

When the doctrine of *lex loci delicti* was first established in the mid-nineteenth century, conditions were such that people only occasionally crossed state boundaries. Under those circumstances, there was legitimacy in a rule which presumed that persons changing jurisdictions would be aware of the different duties and obligations they were incurring when they made the interstate journey. Further, even if persons making these occasional journeys into neighboring states were not actually aware of the changing duties and responsibilities, enforcing the laws of the jurisdiction in which they were wronged was justified because of the 'vested rights' doctrine that was prevalent and widely accepted at that time. *See* Page, *Conflict of Law Problems in Automobile Accidents,* 1943 Wis. L. Rev. 145, 150. Thus, the rule of *lex loci delicti* was originally viewed as a practical formula by which individuals could govern their actions in accordance with prevailing attitudes and customs, providing both uniformity of application and predictability of results.

However, with the industrial revolution and the passage of time, the interstate mobility of the citizenry increased in speed and availability to such an extent that persons no longer regarded an interstate journey as a rare occurrence entailing a significant change of surroundings. As these attitudes and conditions changed, it became clear that the mechanical application of *lex loci delicti* to every multistate tort controversy often yielded harsh, unjust results, unrelated to the contemporary interests of the states involved or the realistic expectations of the parties.

To avoid the growing number of undesirable results which strict adherence to *lex loci delicti* produced, courts devised

various methods of characterizing the issues in the controversy to allow them to deviate from the application of *lex loci delicti* without offending *stare decisis.* By labeling a matter as 'procedural' rather than 'substantive,' or 'contractual' rather than 'tortious,' courts were able to apply law other than the law of the place of the wrong. *See,* e.g., *Kilberg v. Northeast Airlines, Inc.,* 9 N.Y.2d 34, 211 N.Y.S.2d 133, 172 N.E.2d 526; *Grant v. McAuliffe,* 41 Cal.2d 859, 264 P.2d 944. In the process the courts were, in effect, making a choice of law decision without exposing the real choice influencing factors for objective classification and criticism. This constant search for a result which would comport with reason and justice made it evident by the mid-twentieth century that the doctrine of *lex loci delicti* no longer provided the high degree of predicability and uniformity which were considered its primary virtues.

The questionable viability of the *lex loci delicti* rule in today's society has been recognized by courts and commentators alike. In the last ten years, while several states have retained adherence to the broad *lex loci delicti* rule,[2] a greater number of jurisdictions have abandoned or rejected *lex loci delicti* in favor of a more flexible and rational choice

---

[2] *See Heidemann v. Rohl,* 86 S.D. 250, 194 N.W.2d 164 (1972); *Winters v. Maxey,* Tenn. , 481 S.W.2d 755 (1972); *Abendschein v. Farrell,* 382 Mich. 510, 170 N.W.2d 137 (1969); *Cook v. Pryor,* 251 Md. 41, 246 A.2d 271 (1968); *Marmon v. Mustang Aviation, Inc.,* 416 S.W.2d 58 (Tex. Civ. App. 1967), *aff'd* 430 S.W.2d 182 (1968); *Hopkins v. Lockheed Aircraft Corp.,* 201 So.2d 749, *rev'd.* on rehearing, 201 So.2d 743 (Fla. 1967); *Johnson v. St. Paul Mercury Ins. Co.,* 256 La. 289, 236 So.2d 216 (1966); *Landers v. Landers,* 153 Conn. 303, 216 A.2d 183 (1966); *McGinty v. Ballentine Produce, Inc.,* 241 Ark. 533, 408 S.W.2d 891 (1966); *Cherokee Laboratories, Inc. v. Rogers,* 398 P.2d 520 (Okla. 1965); *Cobb v. Clark,* 265 N.C. 194, 143 S.E.2d 103 (1965); *Friday v. Smoot,* 211 A.2d 594 (Del. 1965); *McDaniel v. Sinn,* 194 Kan. 625, 400 P.2d 1018 (1965); *Oshiek v. Oshiek,* 244 S.C. 249, 136 S.E.2d 303 (1964).

of law approach in multistate tort cases.[3] The majority of those cases rejecting the *lex loci delicti* rule have involved the application of host-guest statutes or the question of interspousal liability for injuries received in automobile or airplane accidents. Additionally, the overwhelming majority of commentators are opposed to the mechanical application of the place of wrong rule,[4] largely for the reasons previously discussed.

The rationale of the cases rejecting *lex loci delicti,* the views of eminent authorities in the field of tort law, and our own observations and experience convince us a more flexible and rational approach than *lex loci delicti* affords is necessary. We fully appreciate the arguments made by the

---

[3] *Issendorf v. Olson,* 194 N.W.2d 750 (N. Dakota, 1972); *Fox v. Morrison Motor Freight, Inc.,* 25 Ohio St. 2d 193, 267 N.E.2d 405 (1971); *Beaulieu v. Beaulieu,* 265 A.2d 610 (Maine, 1970); *Kennedy v. Dixon,* 439 S.W.2d 173 (Mo. 1969); *Woodward v. Stewart,* 104 R.I. 290, 243 A.2d 917 (1968), pet. for cert. denied, 393 U.S. 957 (1969); *Armstrong v. Armstrong,* 441 P.2d 699 (Alaska 1968); *Mitchell v. Craft,* 211 So.2d 509 (Miss. 1968); *Schneider v. Nichols,* 280 Minn. 139, 158 N.W.2d 254 (1968); *Schwartz v. Schwartz,* 103 Ariz. 562, 447 P.2d 254 (1968); *Casey v. Marson Constr. & Engineering Co.,* 247 Ore. 274, 428 P.2d 898 (1967); *Mellk v. Sarahson,* 49 N.J. 226, 229 A.2d 625 (1967); *Myers v. Gaither,* 232 A.2d 577 (D.C. App. 1967); *Reich v. Purcell,* 67 Cal.2d 551, 432 P.2d 727, 63 Cal. Rptr. 31 (1967); *Wessling v. Paris,* 417 S.W.2d 259 (Ky. 1967); *Clark v. Clark,* 107 N.H. 351, 222 A.2d 205 (1966); *Wartell v. Formusa,* 34 Ill. 2d 57, 213 N.E.2d 544 (1966); *Fabrisuc v. Horgen,* 257 Ia. 268, 132 N.W.2d 410 (1965); *Griffith v. United Air Lines, Inc.,* 416 Pa. 1, 203 A.2d 796 (1964); *Babcock v. Jackson,* 12 N.Y.2d 473, 240 N.Y.S.2d 743, 191 N.E.2d 279 (1963).

[4] *See,* e.g., Leflar, *Choice-Influencing Considerations in Conflicts Law,* 41 N.Y.U.L. Rev. 267 (1966); Cavers, *A Critique of the Choice of Law Problem,* 47 Harv. L. Rev. 173 (1933); Cheatham and Reese, *Choice of the Applicable Law,* 52 Colum. L. Rev. 959 (1952); Currie in *Comments on Babcock v. Jackson, A Recent Development in Conflict of Laws,* 63 Colum. L. Rev. 1212, 1233 (1963); Ehrenzweig, *The 'Most Significant Relationship' in the Conflicts Law of Torts,* 28 Law & Contemp. Prob. 700 (1963); Reese in *Comments on Babcock v. Jackson,* 63 Colum. L. Rev. 1212, 1251 (1963); Traynor, *Is This Conflict Really Necessary?* 37 Texas L. Rev. 647 (1959).

defendant that *lex loci delicti* retains some predictability of result and ease of application by courts. Yet, the facts in the case at bar classically demonstrate the injustice and irrationality of the automatic application of the *lex loci delicti* rule. Both Carol and John Rostek were citizens of Colorado. The airplane in question was registered in Colorado and was returning to Colorado when the accident occurred. The lawsuit was brought in a Colorado forum with a Colorado resident as defendant. It becomes evident, therefore, that South Dakota's only interest in this controversy is the fortuitous occurrence of the accident within its borders. Thus the trial court's decision to apply South Dakota law to this case can be affirmed only if we are to adhere to a mechanical and unfailing application of the place of wrong rule, regardless of the interests of the states involved or the expectations of the parties. This we refuse to do.

### III.

Although most courts and commentators are united in their opposition to the use of the general *lex loci delicti* rule, there is disagreement as to which approach should be adopted.[5] Some would emphasize the law of the place of the forum, while others would place more emphasis on the expectations of the parties. Still others stress the need to consider the interests of the various governmental entities involved. All of the generally accepted approaches, however, suffer from a similar defect; namely, they are all 'approaches,' to be applied in a more or less *ad hoc* fashion, and containing indeterminate language with no concrete guidelines. Thus, quite naturally, these approaches have exhibited a certain lack of both predictability of result and uniformity

---

[5] In addition to those listed in Note 4, *see* Symposium, *Neumeier v. Kuehner: A Conflicts Conflict,* 1 Hofstra L. Rev. 93 (1973); Restatement (Second), Conflict of Laws, Vol. 1, Sec. 145 (1969); Juenger, *Choice of Law in Interstate Torts,* 118 U. Pa. L. Rev. 202 (1969); Cavers, The Choice of Law Process (1965); Weintraub, *A Method for Solving Conflict Problems — Torts,* 48 Cornell L. Q. 215 (1963); Comment, *The Second Conflicts Restatement of Torts: A Caveat,* 51 Calif. L. Rev. 762 (1963).

of application. This situation cannot be completely disregarded. While we recognize that a rational and equitable approach to choice of law is desirable, we now harmonize that approach with the genius of the common law which always sought to provide to its consumers some degree of predictability and consistency in application. As we have said, accidents occurring in states not the domicile of all of the parties are commonplace in today's society. The law should not deal with them as if they were rare and exotic hypotheticals, to be solved by exercises in intellectual gamesmanship. The events in this case, and their probable reoccurrence, are real world concerns, and the law in this area should provide a concrete and viable system for the equal application of just laws. *See* Rosenberg in *Comments on Reich v. Purcell,* 15 U. C. L. A. L. Rev. 551, 641, 644-45 (1968).

Because of the lack of consistency and predictability exhibited by various proposed choice of law 'approaches,' the principal question in choice of law today is whether or not to adopt rational choice of law 'rules,' or to deal with each case as it comes to us on an *ad hoc* basis. Rules are employed in most areas of the law because they provide the benefits of certainty and predictability. To some extent the existence of a rule in any area of the law serves the ends of justice since it furnishes the juridical machinery by which like situations are equally adjudged. *See* Reese, *Choice of Law: Rules or Approach,* 57 Cornell L. Rev. 315 (1972). In short, rules are one of the laws' attributes, and fulfill an essential function of concrete justice.

Thus, in order to provide some predictability of result and uniformity of application, this court turns to the adoption of some rules dealing with choice of law. In so doing, we begin with the particular issue presented in this case; namely, the application of a guest statute to a host-guest controversy. We consider this issue a narrow one, occurring with enough frequency and repetitiveness to enable us to extract specific guidelines that will satisfactorily regulate this issue. *See* Reese, *Choice of Law: Rules or Approach, supra,* p. 325.

■ Our search for a workable choice of law rule in the guest-host area leads to the majority opinion in *Neumeier v. Kuehner,* 31 N.Y.2d 121, 335 N.Y.S.2d 64, 286 N.E.2d 454 (1972), written by Chief Judge Fuld. *See* Symposium, *Neumeier v. Keuhner: A Conflicts Conflict, supra.* In *Neumeier* the court was faced with a guest-host accident situation involving a citizen of Canada and a resident of New York. Judge Fuld admitted that the recent choice of law 'approach' in guest-host controversies, initiated in *Babcock v. Jackson, supra,* had, until *Neumeier,* lacked consistency. The New York court then proceeded to formulate a specific rule governing the application of guest statutes in multistate tort controversies. This rule generally embodies the rational underpinnings of the newer approaches to choice of law problems, emphasizing the expectations of the parties and the interests of the different jurisdictions involved. We are persuaded that it is just and equitable and ought to be accepted in Colorado with respect to the first two sections thereof and we now do so. As stated by the New York court, those sections provide:

"1. When the guest-passenger and the host-driver are domiciled in the same state, and the [vehicle] is there registered, the law of that state should control and determine the standard of care which the host owes to his guest.

"2. When the driver's conduct occurred in the state of his domicile and that state does not cast him in liability for that conduct, he should not be held liable by reason of the fact that liability would be imposed upon him under the tort law of the state of the victim's domicile. Conversely, when the guest was injured in the state of his own domicile and its law permits recovery, the driver who has come into that state should not — in the absence of special circumstances — be permitted to interpose the law of his state as a defense."

IV.

■ We must now apply the aforementioned choice of law rule to determine if the South Dakota guest statute should be applied to the case at bar. Both the guest-passenger and the host-pilot were domiciled and residing in Colorado, and the

airplane was registered in Colorado. Thus, the facts in this case are governed by the first statement of the rule. Under this statement, the rights and liabilities of the parties are governed by the law of the place of domicile which in this case is Colorado. Accordingly, South Dakota law, including its Airplane Guest Statute, is not the appropriate law to apply under this new rule.

We recognize that this case is a comparatively easy one and in cases like it the result will hereafter be reasonably easy for lawyers and judges to reach. Admittedly, there will be harder cases, more difficult to decide even under the narrow host-guest *rule.* However, we believe that the application of this rule promises a fair level of predictability and uniformity in the application of a rational and modern set of choice of law considerations.

V.

 Since the scope of our decision to reject the mechanical application of the rule of *lex loci delicti* extends to all multistate tort controversies, we must now address ourselves to the question of what rules govern choice of law in Colorado outside the rules laid down with respect to host-guest controversies which fit those rules. We announce that Colorado will adopt the general rule of applying the law of the state with the most "significant relationship" with the occurrence and the parties, as presented and defined in the Restatement, (Second) Conflict of Laws, Vol. 1, Sec. 145 (1969). Generally, the *Restatement* requires the application of separate rules to various kinds of torts, and defines "significant contacts" in terms of the issues, the nature of the tort, and the purposes of the tort rules involved. While this *Restatement* rule is somewhat broad, it is no less precise than the concepts of "reasonableness" or "due process" which courts have applied for many years. Hopefully, at some time in the future, as the body of case law develops, we can lay down more specific choice of law rules governing other areas, as we have done today in the area of guest statutes. However, at present, in all areas of multistate tort controversies other than those involving the situations we have dealt with in the

specific rules laid down today, we will use and apply the rule articulated in Sec. 145 of the *Second Restatement on Conflict of Laws,*.

## VI.

Since Colorado law was the appropriate law to be applied to the issues in this case, it was error for the trial court to grant respondent's summary judgment motion on the grounds that South Dakota law barred the suit.

The judgment is reversed and the cause remanded to the trial court for further proceeding not inconsistent with the views herein expressed.