Todd P. BROWN, a/k/a Todd Prentice
Brown, Plaintiff,

v.

GLOBE UNION, A DIVISION OF
JOHNSON CONTROLS, INC.,
a Wisconsin corporation, Defendant,

and

Sigma Geoservices, Inc. and American
International Recovery, Intervenors.

Civ. A. No. 86–C–957.

United States District Court,
D. Colorado.

Aug. 25, 1988.

See also, 661 F.Supp. 1188.

Howard J. Beck, Beck & Cassinis, Aurora, Colo., for plaintiff.

Jay John Schnell, Terence M. Ridley, Roath & Brega, P.C., Denver, Colo., for intervenors.

Warren B. Bosch, Patricia A. Pritchard, Breit, Best, Richman & Bosch, Denver, Colo., for Globe Union.

## MEMORANDUM OPINION
## AND ORDER

CARRIGAN, District Judge.

This diversity action arises out of an injury to the plaintiff Todd P. Brown that occurred on August 2, 1983. The following facts are not genuinely disputed: Plaintiff was performing a temporary two-month job for his employer, the intervenor Sigma Geoservices, Inc. ("Sigma") in Bunker Hill, Kansas. Sigma had supplied the pickup truck that Brown used on the job. While Brown was working under the truck's hood, the battery exploded in his face, causing permanent disability to his left eye. The battery was manufactured by the defendant Globe Union.

On August 14, 1985, Brown filed with the Kansas Division of Workmen's Compensation a claim for benefits under the Kansas Workmen's Compensation Act. The compensation insurance carrier for Sigma, intervenor American International Recovery, Inc. ("American"), paid Brown a total of $30,881.48 in various benefits to settle Brown's claim. Final settlement of Brown's workers' compensation claim occurred in Kansas on May 1, 1986.

In September 1986, Brown filed this lawsuit against Globe Union and Sigma, seeking damages and costs in excess of $1 million. The complaint alleged that Sigma or its agent negligently installed the battery in the truck. In November 1986, Sigma moved for summary judgment on the ground that the action as against it was barred by Colo.Rev.Stat. § 8–42–102. That section generally prohibits an employee who has received workers' compensation benefits from subjecting his employer to a common law action for damages. After Brown confessed Sigma's motion for summary judgment, Judge John L. Kane of this court dismissed Brown's action as against Sigma, and awarded Sigma its reasonable attorneys' fees incurred in defending against the lawsuit.

On February 10, 1987, Sigma filed a notice of mechanics' lien "in order to put all parties on record notice that [its insurance carrier] wishes to assert its subrogation rights for all payments made to the Plaintiff under the Workers' Compensation coverage afforded him." Sigma subsequently amended its notice to name American as the insurance carrier. On October 5, 1987, Sigma and American filed a motion to intervene in this action "for the limited purpose of preserving their right to recover pursuant to C.R.S. § 8–52–108." The motion was granted by Judge Kane on October 15, 1987.

In April 1988, Brown settled his claims against Globe Union. The settlement agreement provides in pertinent part for an initial lump sum payment to Brown in the amount of $75,000, followed by structured payments beginning in January 1992 through which Brown will receive $2,500 per year through 1998. Commencing in November, 2010, Brown or his estate will be paid $1,000 per month for five years. Thereafter, if he is still living, he will receive $1,000 per month for the rest of his life. Brown has retained an actuary who has calculated the present value of this settlement at $107,300.

Upon learning that Brown and Globe Union were about to settle the case, Sigma and American moved for an order directing Brown to deposit $30,881.48 of the settlement proceeds with the court registry in an interest bearing account. On February 18, 1988, Brown confessed the motion. On April 14, 1988, he deposited the $30,881.48 ("Fund") with the court.

Currently pending are the parties' cross motions for summary judgment on the issue of who is entitled to what portion of the Fund. American International contends that it is entitled to the entire amount of the Fund because that is the sum it paid Brown in benefits and settlement. In contrast, Brown argues that he is entitled to the entire Fund because Sigma waived its right to subrogation. Brown also contends that he is entitled to the entire Fund because the negligence of Sigma or its agent caused his injuries. Alternatively, Brown asserts that he is entitled to recover his attorneys' fees and costs incurred in creating the Fund. Brown also has moved for sanctions against the inter-

venors pursuant to Rule 11, Fed.R.Civ.P. and Colo.Rev.Stat. § 13–17–102.

Under Fed.R.Civ.P. 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In *Catrett* the Court held that Rule 56 mandates the entry of summary judgment, upon motion made after adequate time for discovery, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Id.* at 322, 106 S.Ct. at 2552. The Court explained:

> "In such a situation there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is 'entitled to judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she had the burden of proof." *Id.* at 322–23, 106 S.Ct. at 2553.

The parties have briefed the issues and oral argument would not materially assist my decision.

Before reaching the issue of who is entitled to what portion of the Fund, I must, as a preliminary matter, determine whether Colorado or Kansas law controls this issue. Under both Kansas law and Colorado law, when a workers' compensation claimant sues a third party, the employer has a right of subrogation for the amounts recovered by the claimant up to and including the amounts that have been paid to the claimant in workers' compensation benefits. *See* Kan.Stat.Ann. § 44–504; Colo.Rev. Stat. § 8–52–108(1).

The major differences between the two states' laws are that under applicable Kansas law: (1) *if a claimant recovers damages from a third party and in so doing confers a benefit upon his subrogated employer, the latter may be required to pay a share of the claimant's attorneys' fees and costs incurred in recovering the damages;* and (2) the negligence of the employer or those for whom the employer is responsible may diminish the employer's subrogation interest. Kan.Stat.Ann. § 44–504(c), (d). In contrast, the applicable Colorado provision, Colo.Rev.Stat. § 8–52–108(1), is silent as to whether an employer may be required to contribute to paying the claimant's attorneys' fees incurred in recovering damages from a third-party. Notably, the Colorado Supreme Court has expressly declined to decide this issue. *Matter of Death of Peterkin,* 729 P.2d 977, 980 (Colo.1986). Additionally, Brown has not offered any case law or other authority for the proposition that Colorado law permits diminishing or forfeiting an employer's subrogation right if the employer's negligence caused the claimant's injuries.

Not surprisingly, the intervenors insist that Colorado law controls the issue of who is entitled to what portion of the Fund, and Brown contends that Kansas law applies.[1]

■ A federal court sitting in diversity must apply the conflicts of law rules of the state in which it sits. *Klaxon Co. v. Stentor Mfg. Co.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941); *ANR Production Co. v. Westburne Drilling, Inc.,* 581 F.Supp. 542, 545 (D.Colo.1984). Colorado has adopted the most significant relationship test for determining which state's law applies in both tort and contract actions. *First Nat. Bank in Fort Collins v. Rostek,* 182 Colo. 437, 514 P.2d 314 (1973); *Wood Bros. Homes, Inc. v. Walker Adjustment Bureau,* 198 Colo. 444, 601 P.2d 1369 (1979).

Applying this test, I find that Kansas has the most significant relationship with the

---

1. Brown alternatively contends that even if Colorado law applies to the intervenors' subroga-
tion claim, he still is entitled to at least a proportionate share of his costs and attorneys' fees.

instant controversy.[2] I am aware that Colorado has the following contacts with this action: (1) Brown is a Colorado resident who was injured on the job while working for a Colorado employer; (2) this lawsuit was filed in Colorado; (3) Brown possesses a Colorado driver's license; and (4) Brown was insured by his employer in Colorado.

Nonetheless, I find controlling the facts that Brown was injured in Kansas, his workers' compensation claim against Sigma was filed in Kansas under Kansas' workers' compensation statute, and his rights and responsibilities giving rise to this dispute were governed by Kansas law.

When resolving a dispute over subrogation rights, there are strong reasons for applying the law of the state whose workers' compensation law was invoked by the employee-claimant to recover workers' compensation benefits. As observed by Brown:

> "First, subrogation rights in the worker's compensation situation arise exclusively under the applicable worker's compensation act. As a result, since the employer's right to subrogation, if any, is created by statute, the state statute creating such rights should be applied to determine each of the employer's rights and liabilities thereunder. Second, it has been determined that the state whose worker's compensation program is most significantly involved has the most significant interest in the application of its policies. Finally, the application of the statute assures uniform and predictable results and does not allow one party to take advantage of the portion he likes and disregard those portions of which he disapproves." (Plaintiff's verified cross-motion, at 12.)

Section 185 of the *Restatement (Second) Conflict of Laws* supports application of Kansas law to this dispute.[3] That section provides:

> "*The local law of the state under whose workmen's compensation statute an employee has received an award* for an injury *determines what interest the person who paid the award has in any recovery for tort* or wrongful death *that the employee may obtain against a third person* on account of the same injury." (Emphasis added.)

Comment (a) to § 185 explains that section's rationale:

> "Situations arise where an employee while acting in the course of his employment is injured by the wrongful conduct of a third party who is not declared immune from liability for tort or wrongful death by an applicable workmen's compensation statute.... In such situations, the third party remains liable even after an award has been rendered and paid. The workmen's compensation statutes differ as to what interest the person who has paid the award has in the recovery on the cause of action against the third party. Under some statutes, acceptance of compensation by an injured employee or his dependents terminates his rights against the third party. In such a case, only the person who has paid the award (either the employer or an insurer) has an interest in the cause of action. Other statutes provide, however, that the person who has paid the award shall be reimbursed out of the proceeds of the judgment, and that the employee shall receive any sum that may remain.

> "*Under the rule of this Section, the local law of the state under whose workmen's compensation statute the claimant has received an award for an injury determines what interest the person who paid the award has in the* the two states' respective workers' compensation laws.

---

**2.** In finding that Kansas has the most significant contacts with the present dispute, I am mindful of Judge Kane's prior determination in this case that Colorado had the most significant relationship with respect to Brown's claims against Globe Union. (*See* Judge Kane's Memorandum Opinion and Order of June 23, 1987, at 3.) Importantly, Judge Kane's determination is inapplicable to the instant dispute over the Fund because it did not involve consideration of

**3.** The Colorado Supreme Court has acknowledged that the Restatement (Second) Conflict of Laws applies to both tort and contract actions. *Wood Bros. Homes, Inc. v. Walker Adjustment Bureau*, 198 Colo. 444, 601 P.2d 1369 (1979).

*recovery of any cause of action for tort* or wrongful death *that the employee may have against a third person on account of the same injury.*" (Emphasis added.)

Applying § 185 to the present case, Kansas law should be applied to determine the intervenors' interest in Brown's recovery of damages from Globe Union because it was under Kansas law that Brown received his benefits and settlement.

Extrajurisdictional case authority also supports applying Kansas law to this dispute. One example is *Perry v. Carter*, 620 S.W.2d 50 (Mo.App.1981). There, an employee injured in an automobile collision received worker's compensation benefits under Georgia's workers' compensation law. She then filed suit in a Missouri state court against the other party involved in the collision. The employer and its compensation carrier subsequently intervened, seeking to be subrogated to the plaintiff's recovery and to have a lien on any amount that the plaintiff received. After the employee settled the case for $13,000, the lower court ruled that she was entitled to the entire amount. Apparently, the court reasoned that the applicable Georgia law did not provide a right of subrogation or reimbursement to the employer or insurer who had paid the compensation benefits.

The insurance company appealed, arguing that the court had erred in not applying Missouri law to its subrogation claim. The appellate court affirmed. In ruling that Georgia law controlled the subrogation dispute, the court observed that "[i]t appears to be the usual rule that the *reimbursement rights of a workmen's compensation carrier are governed by the law of the state whose Workmen's Compensation Act was invoked by the claimant in obtaining the benefits.*" *Id.* at 52 (emphasis added; citations omitted).

Another case involving similar facts is *Goodemote v. Mushroom Transportation Co.*, 427 F.2d 285 (3rd Cir.1970). There, the plaintiff who was injured during the course of his employment, received $7,293.61 in benefits from his employer's insurance carrier pursuant to New York's

workers' compensation law. Plaintiff subsequently sued the alleged third-party tortfeasor, Mushroom Transportation Corporation. Plaintiff's claims were settled for $60,000, all but $7,293.61 of which was distributed to the plaintiff. The remaining $7,293.61 was held subject to conflicting claims by the insurance carrier and the plaintiff's attorney.

Under applicable New York law, when an employee-claimant who had received workers' compensation benefits from his employer's insurance carrier settled his claims against the alleged third-party tortfeasor, the settlement proceeds had to be devoted to the carrier's full reimbursement. Plaintiff's attorney, however, argued that Pennsylvania law was controlling, and that under the applicable Pennsylvania statute he was entitled to a fee from the insurance carrier because he had created a fund for the carrier's benefit. The district court applied Pennsylvania law after determining that Pennsylvania's interests in the case were controlling, and awarded a fee to the plaintiff's attorney.

The Third Circuit reversed, ruling that New York law applied because the plaintiff had "elected to receive benefits under the New York law which explicitly requires him to bear all counsel fees when he pursues his remedy against third parties." 427 F.2d at 287.

Here, Brown elected to receive benefits under Kansas' workers' compensation law. In so doing he availed himself of that law's protections and obligations. At least for purposes of this case it is undisputed that Kansas law is more favorable than Colorado law to an injured employee who receives benefits under the statute and then recovers subrogable damages from a third party. Therefore it is understandable that an injured employee in Brown's position, if given the choice, would elect to file his workers' compensation claim in Kansas, rather than in Colorado, assuming that Colorado has no offsetting advantages.

It is also conceivable that Brown agreed to a lesser amount in settlement of his workers' compensation claim against Sigma because he believed that he could sue

Globe Union, and that, under the law of the state in which he had filed his claim, he could recover any attorneys' fees incurred in creating a benefit for Sigma or its insurance carrier. To switch applicable workers' compensation laws "midstream" would unfairly interfere with Brown's legitimate expectations. Clearly, Kansas has a strong interest in making sure that a person who recovers benefits under its workers' compensation law is not later deprived of that law's protections.

Now that I have determined that Kansas law applies, I must consider the parties' conflicting claims to the Fund. As mentioned, Brown argues that he is entitled to the entire Fund, asserting that Sigma has waived its subrogation rights. Additionally, he contends that he is entitled to the entire amount because Sigma or its agent was negligent in causing his injuries. Finally, he argues that he is entitled to recover the costs and attorneys' fees incurred in creating the Fund. I shall address these contentions in the order just presented.

### 1. *Waiver of Subrogation Rights.*

■ Section 44–504(a), Kan.Stat.Ann., "allows an employee who is injured by a third party to sue such third party for damages and still be entitled to workers' compensation benefits." *Anderson v. National Carriers, Inc.,* 11 Kan.App.2d 190, 717 P.2d 1068, 1070 (1986), *aff'd,* 240 Kan. 101, 727 P.2d 899 (1986). Subsection (b) of that statute qualifies the employee's right to recover from the other person by providing that:

> "In the event of recovery from such other person by the injured worker … by judgment, settlement or otherwise, *the employer shall be subrogated to the extent of the compensation and medical aid provided by the employer* to the date of such recovery and shall have a lien therefor against such recovery and the employer may intervene in any action to protect and enforce such lien." (Emphasis added.)

Sigma claims subrogation rights to the Fund under § 44–504(b). Brown, however, contends that Sigma has waived, and there-

fore is estopped from asserting, its subrogation claim.

"Waiver is the intentional relinquishment of a known right or privilege." *Department of Health v. Donahue,* 690 P.2d 243, 247 (Colo.1984). A waiver may be explicit, as when a party orally or in writing abandons an existing right or privilege; or it may be implied, as, when a party engages in conduct that manifests an intent to relinquish the right or privilege, or acts inconsistently with its assertion. *Id.* "Although an intent to waive a benefit may be implied by conduct, the conduct itself should be free from ambiguity and clearly manifest the intention not to assert the benefit." *Id.*

Brown contends that Sigma waived its subrogation rights when it moved for summary judgment, seeking dismissal of Brown's action as against it. In support of this argument, Brown relies on *Kelley v. Summers,* 210 F.2d 665 (10th Cir.1954). There, a workplace accident resulted in the death of one employee and injury to another. The deceased employee's widow and the injured employee both filed workers' compensation claims under Texas law. The worker's compensation insurance company paid or obligated itself to pay benefits to both claimants. Subsequently, the widow and the injured employee each filed a separate negligence action against the employer. With leave of court, the insurance carrier intervened, asserting its rights of subrogation. The cases were consolidated for trial.

On the day before trial, the insurance carrier moved to withdraw and dismiss, without prejudice, its two complaints in intervention. The court granted the carrier's request. Subsequently, the jury returned a verdict in favor of the widow and the injured employee. After the verdict but before entry of judgment, the insurance company, without obtaining leave of the court, again filed in each case a motion to intervene. The court denied these motions.

On appeal, the Tenth Circuit noted that under the applicable workers' compensation law, an insurance carrier who made payments to an injured employee, or the

dependents of a deceased worker, is subrogated, to the extent of those payments, to the rights of the injured worker or the dependents of the deceased worker against a third-party tortfeasor whose negligence proximately caused the injury or death. However, the court held that the insurance company's voluntary dismissal of its complaints in intervention on the eve of trial "amounted to an abandonment or waiver of its right further to proceed by intervention in the then pending actions." 210 F.2d at 674. The court reasoned:

> "In view of the fact that after being a party to each action, the insurance company voluntarily withdrew and retired to a position behind the curtain, so to speak, and remained there during the trial and for more than five months thereafter, in view of the fact that as a result of such withdrawal the court withheld from the jury evidence which otherwise would have been admitted, and in view of the fact that in the opinion of the trial court the outcome of the trial might have been different if the interventions had not been dismissed, it cannot be said that the motions to intervene the second time were timely or that their denial constituted an abuse of discretion." *Id.*

Brown contends that "the rationale applied in *Kelley* should be applied to this case." (Motion, at 11.) Specifically, he contends that "Sigma's failure to assert any subrogation right, failure to request that it be joined as a party plaintiff in order to pursue its claims jointly with Brown against Globe Union, while requesting that it be dismissed with prejudice," constitutes the intentional relinquishment of a known right and privilege and, therefore, Sigma has waived and is estopped from asserting its subrogation claim. (*Id.*)

Clearly, *Kelley* is distinguishable from this case. There, the intervenor insurance company voluntarily joined in the lawsuit for the sole purpose of claiming its subrogation right, and then, as an apparent litigation tactic, moved for dismissal on the day before trial. In contrast, Sigma was not a voluntary party to this lawsuit when it was dismissed. Rather, it was being sued for over $1 million. Additionally, it

was not dismissed on the eve of trial. Moreover, the propriety of Sigma's motion for summary judgment is reaffirmed in the fact that Judge Kane not only dismissed the action as against Sigma but also awarded Sigma its attorneys' fees.

■ Brown next contends that Sigma waived its subrogation rights, or became barred from asserting those rights, by failing to commence an action against Globe Union within the two-year limitation period provided by Kan.Stat.Ann. § 60–513. Brown asserts that Sigma's subrogation claim to the Fund accrued on August 2, 1983, the date of his accident.

> Section 60–513 provides in relevant part: "[T]he cause[s] of action in this section shall not be deemed to have accrued until the act giving rise to the cause of action first causes substantial injury, or, if the fact of injury is not reasonably ascertainable until some time after the initial act, then the period of limitation shall not .commence until the fact of injury becomes reasonably ascertainable to the injured party...."

In response, the intervenors argue that the statute of limitations did not commence to run on their right of subrogation "until a settlement res was created against which they could assert a claim." (Intervenor's response, at 3.) Intervenors cite *Continental Casualty Co. v. Gate City Steel*, 650 P.2d 1336, 1338 (Colo.App.1982), in support of this contention. Notably, that case did not involve a statute of limitations question. However, the court, in applying Colorado's workers' compensation statute, did state that "the insurer's right to reimbursement under the statute need not be based on a finding of legal liability on the part of the third-party tortfeasor. Instead, *such right to reimbursement may be based on the fact of the employee's monetary recovery from the third-party tortfeasor.*" *Id.* at 1338 (emphasis added.)

I agree with the above-emphasized language from *Continental Casualty,* and hold that it applies to this case. While Sigma's claim for subrogation against Globe Union probably accrued when the

plaintiff's injury occurred, its claim for subrogation *against Brown* came into existence when Brown collected on the settlement of his lawsuit against Globe Union on April 14, 1988. Indeed, Brown himself states that he did not respond to Sigma's February 1987 notice of mechanics' lien because "Sigma's subrogation claim, if any, *would arise only at the time Brown recovered from Globe Union.*" (Plaintiff's verified cross-motion, at 3–4; emphasis added.) Moreover, Brown has failed to provide this court with any case authority for his assertion that Kansas' workers' compensation law requires an employer or its insurance carrier to sue an alleged tortfeasor in order to preserve its subrogation right to damages subsequently recovered by the employee-claimant. I therefore conclude that Sigma's subrogation claim against Brown did not accrue before April 14, 1988, and therefore it is not barred by the statute of limitations.

### 2. *Negligence of Sigma.*

■ Brown contends that he is entitled to the entire Fund because Sigma or its agent negligently caused his injuries. Under Kan.Stat.Ann. § 44–504(d):

> "If the negligence of the worker's employer or those for whom the employer is responsible other than the injured worker, is found to have contributed to the party's injury, the employer's subrogation interest or credits against future payments of compensation and medical aid, as provided by this section, *shall be diminished by the percentage of the damage award attributed to the negligence of the employer or those for whom the employer is responsible,* other than the injured worker." (Emphasis added.)

Brown requests that in the event this court determines that Kansas law controls disposition of the Fund, that he be permitted to amend the first amended complaint to reassert his negligence claims against Sigma solely for the purpose of reducing the intervenors' subrogation claim.

Rule 15(a), Fed.R.Civ.P., provides that once a responsive pleading is served, a party may amend his pleading only by leave of court or by written consent of the adverse party, "and leave shall be freely given when justice so requires."

In the present action I conclude that justice would be served by permitting Brown to amend the first amended complaint to reassert his negligence claims against Sigma for the limited purpose of reducing the intervenors' subrogation claim.

### 3. *Recovery of Costs and Attorneys' Fees.*

■ Brown contends that under Kansas law, the intervenors must proportionately share his attorneys' fees and costs incurred in obtaining the settlement with Globe Union. He states that he has "a contingent fee arrangement with his attorneys which provides that he will pay out-of-pocket costs and 33% of the amount actually collected as attorneys' fees." (Plaintiff's verified cross-motion, at 17.) Brown therefore requests that the intervenors be compelled "to contribute 33% of the [Fund] actually collected for Sigma and 33% of his out-of-pocket costs ($1,420.11) or $10,659.52, towards the payment of the attorneys' fees and costs incurred" by him. *Id.*

Section 44–504(c), Kan.Ann.Stat. provides that "[t]he court shall fix the attorneys' fees which shall be paid proportionately by the employer and employee in the amounts determined by the court." The Kansas Supreme Court has held that this clause applies to actions and claims against a third-party asserted by the employee under § 44–504(b). *Nordstrom v. City of Topeka,* 228 Kan. 336, 613 P.2d 1371 (1980).

The rationale behind § 44–504(c) was explained by the Kansas Court of Appeals in *Anderson, supra,* 11 Kan.App.2d 190, 717 P.2d 1068. There, the plaintiff was hit by a truck while in the course of his employment. He filed a workers' compensation claim, and received $96,219.36 from his employer and its insurance carrier. Plaintiff then sued the truck's owner and operator, and the insurance company filed a notice of lien and intervention with the trial court to preserve its subrogation rights. Plaintiff obtained a $154,000 judgment against the defendant, and the insurance company as-

serted a subrogation claim for the entire amount. However, the trial court reduced the insurance company's subrogation lien by the percentage of negligence attributed to the employer, and by one-third as attorneys' fees for the plaintiff.

On appeal, the Kansas Court of Appeals upheld the plaintiff's recovery of attorneys' fees, reasoning:

"Since it is clear that the employer recovered at least some of the benefits it paid plaintiff for workers' compensation, it is within the purpose of the statute to allow the plaintiff to recover some attorney fees. *To interpret it otherwise would have a definite chilling effect on an employee's decision to bring an action.*" 717 P.2d at 1073 (emphasis added).

The court added that "[a]llowance of a fee of one-third of the subrogation recovery is not an abuse of discretion." *Id.*

Here, the intervenors contend that Brown is not entitled to recover a pro rata share of his attorneys' fees because Brown's counsel was not protecting the intervenors' interests. (Intervenors' cross-motion, at 19.) Rather, the intervenors argue, they had to pay their own attorneys' fees to protect their subrogation rights. Intervenors add that they have "found no Kansas case requiring the employer's workmen's compensation insurance carrier to pay double attorneys' fees." (*Id.* at 19–20.)

In support of their contention that Brown cannot recover his attorneys' fees, the intervenors rely on *Carter v. Par–Kan Construction Co.,* 348 F.Supp. 1295 (D.Neb.1972). As in this case, the plaintiff there recovered workers' compensation benefits, and then sued a third-party for damages. Also as in the present case, the employee settled his lawsuit. Subsequently, the insurance company that had paid the benefits asserted a subrogation claim in the amount of its payments to the employee, and retained separate counsel to represent its interests.

The court first determined that "the court costs should be prorated between the plaintiff and the insurance company in the same proportion that they share in the benefits bestowed by this action and settlement." 348 F.Supp. at 1296. However, the court refused to award the plaintiff a proportionate share of his attorneys' fees incurred in obtaining the settlement despite the fact that state law authorized such an award. The court reasoned:

"To assess the insurance carrier for a portion of the plaintiff's attorney's fees would entail finding that the counsel of the insurance carrier in fact represented less than his client's full interest, and the further finding that the plaintiff's counsel, to some extent, represented the insurance company.

\*　　\*　　\*　　\*　　\*　　\*

"It is the opinion of the Court that the presence and participation of the insurance company's separate counsel during the course of this lawsuit raises a presumption that he, in fact, represented his client in the litigation." *Id.* at 1297.

*Carter* is distinguishable from the present case. The court there acknowledged that generally it would be inequitable for a subrogated insurance company to receive a windfall and not share the plaintiff's costs of attorneys' fees. *Id.* at 1297. However, it found that the insurance company did not receive a windfall.

Here, in contrast, the intervenors clearly would receive a windfall from the plaintiff's attorneys' risk and efforts in obtaining the settlement. Had the plaintiff not sued Globe Union, the intervenors would not be recovering any of the amount paid in benefits and settlement to the plaintiff. Brown states in his cross-motion for summary judgment:

"On March 5, 1987, Brown's counsel contacted Mr. Edward Pate, an adjuster for American International Recovery, in an attempt to locate its investigative files which were prepared at the time of the battery explosion. Mr. Pate expressed his surprise that Brown had chosen to proceed against Globe Union and stated that he doubted that Brown had a cause of action against the manufacturer since batteries explode all the time and that

was why American International Recovery had not independently pursued any claims against Globe Union." (Plaintiff's cross-motion, at 4.)

This statement was not disputed by the intervenors in their response to the plaintiff's cross motion for summary judgment. Moreover, it appears likely that the intervenors' potential claims against Globe Union are now barred by the statute of limitations.

Intervenors also rely on *Anderson v. Twin City Lines*, 289 Minn. 11, 182 N.W.2d 193 (1970). There, after an employee injured in a collision with a truck received workers' compensation benefits, he sued the truck owner for damages. His self-insured employer also sued the owner, utilizing its own attorney. After joint negotiations, the employer and the employee reached a settlement with the owner.

Subsequently, the state workers' compensation commission issued an order requiring the employer to pay a proportionate share of the employee's attorneys' fees and costs incurred in obtaining the settlement, and the employer sought review of the order in the state supreme court. The supreme court reversed the commission's order, reasoning that "to require employer here to pay employee's attorney in proportion to a figure including the subrogation recovery would, in effect, place upon the employer a burden of double payment." *Id.* 182 N.W.2d at 195.

Clearly, *Anderson* is distinguishable from the instant case because the court there expressly found that the "employer's recovery of the $7,000 settlement of its subrogated claim was due to the efforts of its own attorney and occurred after the commencement of an independent action by the employer." *Id.* at 195.

Here, in contrast, the employer's recovery of the Fund resulted solely from the efforts of Brown and his attorneys. As observed by Brown:

"[Intervenors'] 'contribution' has been limited to filing a Notice of Worker's Compensation Lien, intervening, attending the settlement conferences in order to protect their subrogation rights, filing a Motion to Pay Settlement Proceeds into the Court Registry and instigating the filing of these Cross–Motions for Summary Judgment. A close examination of the attorneys' fees incurred by Intervenors establishes that Intervenors have *never* attempted to contribute to Brown's prosecution of his claims against Globe Union." (Plaintiff's verified response, at 12; emphasis in original.)

Intervenors insist that permitting Brown to recover any of his attorneys' fees would be unjust. Specifically, they state:

"Under Brown's theory, he is entitled to recover a pro rata share of attorneys' fees from Intervenors' subrogated share, ostensibly one-third of the $30,881.48. Under this scheme, Intervenors would receive only a fraction of the amount of benefit actually paid to claimaint. $10,-283 would immediately go to Brown and the remaining $20,598.48 would be divided between Intervenors and [their attorneys]. *Such a distribution would work an injustice to Intervenors under both Colorado and Kansas law.*" (Intervenor's cross-motion, at 20; emphasis added.)

The intervenors' plaint of "injustice," evokes no sympathy. Their argument ignores the fact that but for the plaintiff's attorneys' efforts, and the risk undertaken by them, the intervenors and their attorneys would not be receiving *any* portion of the Fund. Brown and his attorneys undertook a significant risk in suing Globe Union. Intervenors could have undertaken that risk on their own behalf, but chose not to. They took no action or risk whatever to create the fund; rather they now seek to appropriate the fruits of work and risk undertaken by the plaintiff's attorneys but to deprive those attorneys of fair compensation for having planted, nurtured and harvested those fruits. The contingent fee is the sharecropper's share of the crop he or she raises, and elemental justice requires that the laborers in the vineyard of justice be fairly compensated.

I therefore find and conclude that Brown is entitled to recover his reasonable attorneys' fees and costs incurred in creating

the the Fund. I further find and conclude that his contingency fee arrangement with his attorneys was reasonable and fair under the circumstances, both as to terms and amount.

With respect to Brown's motion for sanctions, I conclude that the conduct of the intervenors and their counsel in this action has been neither unreasonable nor vexatious. Accordingly the motion for sanctions must be denied.[4]

For the reasons stated above, IT IS ORDERED that:

(1) Plaintiff Todd P. Brown's cross-motion for summary judgment is granted in part and denied in part;

(2) The clerk of this court shall pay to the plaintiff Todd P. Brown 33% of the $30,881.48 that has been deposited by the plaintiff in the court registry as a proportionate share of his costs and attorneys' fees incurred in obtaining his settlement with Globe Union. The clerk shall also pay to the plaintiff pre-judgment interest on 33% of $30,-881,38, accruing since April 14, 1988, and post judgment interest according to law.

(3) The clerk of this court shall pay to the plaintiff Todd P. Brown out-of-pocket costs in the amount of $1,420.11, to be taken from the $30,-881.48 that has been deposited by the plaintiff in the court registry;

(4) Plaintiff Todd P. Brown's request to amend the first amended complaint to reassert negligence claims against Sigma Geoservices, Inc. is granted for the limited purpose of providing an opportunity to determine whether the intervenors' subrogation claim should be reduced further. Plaintiff shall file the second amended complaint within 11 days of this order. Sigma Geoservices, Inc. shall respond to the second amended complaint within 21 days after receiving it;

(5) Intervenors Sigma Geoservices, Inc. and American International Recovery, Inc.'s cross-motion for summary judgment is denied but, subject to Rule 11, Fed.R.Civ.P., and 28 U.S.C. § 1927, may be renewed with respect to the plaintiff's negligence claims against Sigma Geoservices, Inc.;

(6) The remainder of the $30,881.48 that has been deposited by the plaintiff in the court registry shall remain in the court registry pending the outcome of the plaintiff's negligence claims against Sigma Geoservices, Inc.; and

(7) Plaintiff's motion for sanctions pursuant to Rule 11, Fed.R.Civ.P. and Colo.Rev.Stat. § 13–17–102 is denied.

**4.** Rule 11, Fed.R.Civ.P., imposes an affirmative duty on judges to enforce sanctions when that Rule has been violated. *Chevron, U.S.A., Inc. v. Hand,* 763 F.2d 1184, 1187 (10th Cir.1985). Rule 11 states in pertinent part:

"The signature of an attorney or party [on a pleading] constitutes a certificate by the signer that ... to the best of the signer's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification or reversal of existing law, and that it is not interposed for any improper purpose...."

Although discretion to impose sanctions under Rule 11 should be exercised with care, courts have a duty to apply sanctions in appropriate cases.

An additional deterrent against abuse of the judicial process is found in 28 U.S.C. § 1927. That section provides:

"Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."

Three substantial requirements must be met before liability may be imposed under § 1927: (1) a multiplication of proceedings by an attorney or other person; (2) by conduct that can be characterized as unreasonable and vexatious; and (3) a resulting increase in the cost of the proceedings. *Campana v. Muir,* 615 F.Supp. 871, 894 (M.D.Pa.1985), *aff'd,* 786 F.2d 188 (3rd Cir.1986).